George Milam HALL and Mary
Milam Hall, Plaintiffs,

v.

Steve DOERING, et al., Defendants.

No. Civ.A. 97–2203–KHV.

United States District Court,
D. Kansas.

Jan. 6, 1998.

Order Overruling Reconsideration
Feb. 25, 1998.

George Milam Hall, Greeley, KS, plaintiff, pro se.

Mary Milam Hall, Greeley, KS, plaintiff, pro se.

Michael E. Waldeck, Laura E. Thompson, Niewald, Waldeck & Brown, P .C., Kansas City, MO, for Steve Doering.

Wendell F. Cowan, Jr., Celia K. Garrett, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for David Vaughn, Andy Bair, John Kersley, John Dowell, Gene Highberger, Ann Callahan, Dudley Feuerborn, Howard Thompson, Defendants.

Michael T. Halloran, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, MO, for Bernard J. Lickteig, Mike Lickteig, Steve Lickteig, Defendants.

Terry J. Solander, Garnett, KS, for Kathy Feuerborn, Defendant.

James D. Griffin, Scott R. Ast, Blackwell, Sanders, Matheny, Weary & Lombardi, L.L.P., Overland Park, KS, for Terry J Solander, Defendant.

Lee H. Tetwiler, Winkler, Lee, Tetwiler & Domoney, Paola, KS, for Crown Realty of Kansas, Inc., Janie Burkdahl, Willie Duethman, Defendants.

James C. Morrow, Myerson & Morrow, Kansas City, MO, for Anderson County Review, Defendant.

M. Joan Klosterman, James C. Morrow, Myerson & Morrow, Kansas City, MO, for Garnett Publishing, Inc., Duane Hicks, as Editor of the Anderson County Review, Defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

In their second amended complaint, *pro se* plaintiffs George Milam Hall and Mary Milam Hall, his mother, allege that defendants Steve Doering, Bernard J. Lickteig, Mike Lickteig, Steve Lickteig, Kathy Feuerborn and Terry J. Solander denied and conspired to deny their civil rights under 42 U.S.C. §§ 1983 and 1985, violated and conspired to violate their rights under the Racketeer Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. § 1961 *et seq.*, and committed fraud, conspiracy to defraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and intentional interference with prospective business relations in violation of state law. *Plaintiffs' Second Amended Complaint* (Doc. # 152) filed October 9, 1997. This action comes before the Court on various motions to dismiss: the *Motion Of Terry Solander To Dismiss Plaintiffs' Second Amended Complaint* (Doc. # 168) filed October 24, 1997; *Defendant Steve Doering's Motion To Dismiss Plaintiffs' Second Amended Complaint* (Doc. # 169) filed October 24, 1997; *Defendant Kathy Feuerborn's Motion To Dismiss Plaintiffs' Second Amended Complaint* (Doc. # 172) filed October 27, 1997; and the *Separate Defendants Bernard Lickteig, Mike Lickteig And Steve Lickteig's Motion To Dismiss Second Amended Complaint And Objection To Jurisdiction* (Doc. 173) filed October 27, 1997. The matter also comes before the Court on the *Motion For Summary Judgment Of Terry Solander And Kathy Feuerborn* (Doc. # 167) filed October 24, 1997. Having considered the arguments of record, the Court finds that said motions should be sustained in part and overruled in part for the reasons stated below.

### MOTIONS TO DISMISS

In ruling on a motion to dismiss, the Court must assume the truth of all well-pleaded facts in plaintiffs' complaint and view them in a fight most favorable to plaintiffs. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *see also Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984) (all well-pleaded facts, as distinguished from conclusory allegations, must be taken as true). The Court must make all reasonable inferences in favor of plaintiffs, and the pleadings must be construed liberally. *Id.; see also* Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colorado*, 988 F.2d 97,

98 (10th Cir.1993). The issue in reviewing the sufficiency of plaintiffs' complaint is not whether they will prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that plaintiffs can prove no set of facts in support of their theory of recovery that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements that must be proved. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

### Factual Allegations of Complaint

Plaintiffs allege the following facts, which we deem to be true for purposes of the pending motions to dismiss:[1]

In August, 1994, Bernard Lickteig sold Mary Hall [Mrs. Hall] certain farm property in Greely, Kansas. The property contained various chattels, including several horses which Bernard Lickteig kept on the property and which he claimed to own. As part of the transaction between Bernard Lickteig and Mrs. Hall, the parties executed a purchase agreement which contained certain conditions and which conveyed to plaintiffs certain items of personal property that remained on the real estate. The conditions included agreements that Bernard Lickteig would deliver titles to mobile homes and trucks, repair fencing on the property, plant wheat and cultivate 40 acres of crops on the farm, compensate plaintiffs for care of his horses, and pay for soybeans harvested from the property. Bryan Lickteig, Bernard Lickteig's nephew, later told Hall that the horses belonged not to Bernard Lickteig but to the estate of the Lickteig children [the conservatorship]. After Hall expressed concern about who owned the horses, Bryan Lickteig agreed to provide proof that the conservatorship owned the horses. He also expressed a willingness to compensate plaintiffs for costs which they incurred in caring for the horses.

1. The Court has endeavored diligently to make sense of plaintiffs' factual allegations and legal theories. This is not an easy job. The Court has explicitly counseled plaintiffs concerning the need for a short and plain statement of the claim showing that they are entitled to relief, in compliance with Fed.R.Civ.P. 8(a). The successive drafts of their complaint reveal scant progress, however, on this score. The first page of the second amended complaint, for example, contains a checklist of 16 causes of action. The causes of action listed there do not correspond, however, with the causes of action identified in the body of the second amended complaint, *i.e.,* conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985, by all defendants (unnumbered cause of action which apparently incorporates Counts 1 through 6, ¶¶ 28–48); intentional infliction of emotional distress (unnumbered cause of action which first appears in ¶ 49 and later appears as Count 5, ¶¶ 140–141); negligent infliction of emotional distress (¶ 49); fraud (unnumbered cause of action which apparently incorporates "allegations" 1 and 2, ¶¶ 50–58); conspiracy to commit fraud (unnumbered cause of action which apparently incorporates "allegations" 1 and 2, ¶¶ 59–63); intentional interference with prospective business relations (¶¶ 64–67); civil claim for treble damages under RICO (unnumbered cause of action set forth in ¶¶ 68–70 and Count 1, ¶¶ 125–129); claim for "conspiracy to violate the Racketeer Inflict [sic] And Corrupt Organizations Act" (Count 2, ¶ 130); another claim for "conspiracy to violate the Racketeer Inflict [sic] And Corrupt Organizations Act" (Count 3, ¶¶ 131–137); and a third claim for conspiracy to violate RICO (Count 4, ¶¶ 138–139).

The Court disregards all so-called "causes of action" which plaintiffs purport to incorporate from earlier pleadings, and limits its analysis to the claims which plaintiffs endeavor to set forth in their second amended complaint. As the Court reads that complaint, plaintiffs' claims are as follows:

(1) violation of 42 U.S.C. § 1985 and conspiracy to violate 42 U.S.C. § 1985, by all defendants (¶¶ 28–48);

(2) violation of 42 U.S.C. § 1983 and conspiracy to violate 42 U.S.C. § 1983, by all defendants (¶¶ 28–48);

(3) violation of RICO and conspiracy to violate RICO (¶¶ 68–70 and 125–139);

(4) fraud (¶¶ 50–58) and conspiracy to commit fraud (¶¶ 59–63);

(5) intentional infliction of emotional distress (¶¶ 49 and 140–141);

(6) negligent infliction of emotional distress (¶ 49); and

(7) intentional interference with prospective business relations (claim against Doering and Bernard Lickteig only) (¶¶ 64–67).

On April 17, 1995, Hall sent a letter to Steve Doering, the attorney for Bernard Lickteig, to tell him about a dispute between Bernard Lickteig and Mrs. Hall. The letter alleged that Bernard Lickteig had breached the conditions of the parties' agreement, in that he had failed to deliver the titles, repair the fencing, plant the wheat and cultivate 40 acres, or pay for either the soybeans or the horse care. The letter also stated that Bernard Lickteig had removed property that he was not authorized to take from the farm and notified Doering that Bernard Lickteig should not try to remove additional items. Hall also demanded immediate payment of $50,300.

On April 21, 1995, Kathy Feuerborn, acting as conservator of the Lickteig estate, gave Bernard Lickteig and Mike Lickteig written permission to move four horses which belonged to the conservatorship. That same date, Doering contacted the sheriff's office to request a "civil standby" to recover certain property (including the horses) from plaintiffs' farm.[2] The sheriff's office complied and on April 22, 1995, a deputy sheriff assisted some or all of the defendants in entering plaintiffs' farm, searching it, and seizing plaintiffs' property, including nine horses in which plaintiffs held a security interest under Kansas law.[3]

Plaintiffs contend that while a state court had authorized the Lickteigs to recover certain property, they removed additional property with knowledge that Hall had a "civil arrangement [i.e., contract] with the beneficiaries of the collateral." Plaintiffs claim that by their conduct, defendants conspired

---

2. The Court finds no express authority in Kansas law for a "civil standby" or "civil assist." The record suggests that the deputy sheriff accompanied all or part of the defendants to protect them from violence or interference by plaintiffs, however, and K.S.A. 19–813 authorizes officers to preserve peace.

3. K.S.A. 58–207 provides in pertinent part that persons who feed horses and other livestock shall have a lien upon such livestock for the feed and care which they give to the animals.

4. According to plaintiffs, David Vaughn, sheriff of Anderson County, admits that defendants acted with his knowledge and at his direction. Vaughn and others have been dismissed from this case pursuant to the *Stipulation of Dismissal with Prejudice* (Doc. # 96) filed August 4, 1997.

and committed fraud, "cover up," and malicious prosecution of plaintiffs and their rights. Plaintiffs also allege that defendants acted as part of the "Anderson County Fraud Group" [ACFG] and that defendants acted maliciously to injure plaintiffs and deprive them of constitutional rights.[4]

### ANALYSIS

Plaintiffs assert overlapping theories against the six named defendants, claiming that each acted individually and collectively under the aegis of the ACFG. All defendants argue that plaintiffs' claims should be dismissed because (1) plaintiffs fail to allege facts which establish an actionable claim under 42 U.S.C. § 1983; (2) plaintiffs fail to allege either a conspiracy or a legally sufficient class-based animus under 42 U.S.C. § 1985; (3) plaintiffs fail to allege either a predicate racketeering activity or a pattern of racketeering activity under civil RICO; and (4) the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367(c)(3). Certain defendants assert additional grounds for dismissal, which the Court addresses below.

### A. Claims Under 42 U.S.C. § 1983

To state a claim under Section 1983, plaintiffs must allege that a person has deprived them of a federal right, constitutional or statutory, and that the person acted under of color of state law in doing so. *Morris v. State of Kansas Dept. of Revenue*, 849 F.Supp. 1421, 1425 (D.Kan.1994); *Gomez v.*

Vaughn's participation in joint activity with the remaining defendants is necessary, however, in order for plaintiffs to allege activity under color of state law. *Carey v. Continental Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir.1987) (private person becomes state actor for purposes of § 1983 only if jointly engaged with state officials in prohibited action); *Mann v. Baalman*, 1988 WL 166237, at *3 (D.Kan.1988); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.").

*Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991) (if either element missing, claim not pleaded under Section 1983). To defeat a motion to dismiss, plaintiffs' claim under Section 1983 must state specific facts—not simply legal and constitutional conclusions. *Fee v. Herndon,* 900 F.2d 804, 805 (5th Cir.1990), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990).

Defendants advance various reasons—none of them persuasive—why plaintiffs cannot prevail on their claims under Section 1983. Doering contends that plaintiffs have failed to meet the pleading requirements of Section 1983, in that they have identified no right which Doering violated and have not alleged facts which suggest that Doering acted under color of state law. The Lickteigs adopt a simpler approach, arguing only that plaintiffs' complaint makes no factual allegations. Solander and Feuerborn argue that plaintiffs have abandoned their claim under Section 1983 because the second amended complaint alleges no facts in support of it.

■ The Court disagrees. Admittedly, plaintiffs' *pro se* complaint is poorly structured and difficult to follow. The Court is nonetheless required to liberally construe plaintiffs' *pro se* pleadings, *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Carpenter v. Williams,* 86 F.3d 1015, 1016 (10th Cir.1996), and under this standard plaintiffs have stated a claim. They have identified a federal constitutional right which they claim has been violated and alleged facts which if proven establish a violation of that right. *See Plaintiffs' Second Amended Complaint* (Doc. # 152), ¶ 1 (alleging rights under Fourth, Eighth and Fourteenth Amendments), ¶ 13 (alleging that defendants, acting jointly with sheriff, trespassed or facilitated trespass on plaintiffs' farm, broke down barriers, and stole plaintiffs' property), and ¶ 47 (citing language of 42 U.S.C. § 1983). Giving plaintiffs' complaint the liberal reading to which it is entitled, the Court interprets plaintiffs' claim as a claim that defendants, acting in concert with the sheriff, deprived plaintiffs of their constitutional rights by searching and seizing plaintiffs' property without due process of law.[5] This is sufficient to defeat a motion to dismiss under the liberal *pro se* pleading standard.

## B. Claims Under 42 U.S.C. § 1985

■ The essential elements of a claim under Section 1985 are a conspiracy to deprive plaintiffs of equal protection or equal privileges or immunities, an act in furtherance of the conspiracy, and an injury or deprivation resulting from the act. *Tilton v. Richard-*

---

5. To state a cause of action under Section 1983, plaintiffs must allege that some person, acting under color of state law, deprived them of a federally protected right. *Houston v. Reich,* 932 F.2d 883, 890 (10th Cir.1991) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)); *Blomberg v. Schneiderheinz,* 632 F.2d 698, 699 (8th Cir.1980) (action under color of state law not sufficiently pleaded where plaintiffs failed to allege that misconduct related to official duties of sheriff). The Tenth Circuit has held that a person's position as sheriff does not make all of his actions under "color of law"; rather, it is only when the sheriff exercises power granted by the state that his actions become state actions. *Norton v. Liddel,* 620 F.2d 1375, 1379–80 (10th Cir.1980); *Brown v. Chaffee,* 612 F.2d 497, 501 (10th Cir.1979) (for purposes of Section 1983, acting under color of state law is misuse of power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law).

Under Kansas law, a sheriff has the power to "serve and execute all process, writs, precepts and orders issued or made by lawful authority and to him directed," K.S.A. 19–812, or to preserve the peace. K.S.A. 19–813. *See Kansas v. Reno,* 260 Kan. 117, 129, 918 P.2d 1235, 1243 (1996) (writ of execution was not court order which authorized officers to enter locked residence; officers must obtain court order in aid of execution under K.S.A. 60–2419); *Kansas v. Lyne,* 17 Kan.App.2d 761, 765, 844 P.2d 734, 738 (1992) (sheriff acting pursuant to court order or serving process in civil or criminal case acts in performance of official duties.); *cf. Monell v. Department of Social Svcs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (quoting *Adickes v. Kress,* 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("Congress included customs and usages [in §§ 1983] because of the persistent and widespread discriminatory practices of state officials.... Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.")). Defendants have not argued that plaintiffs have failed sufficiently to plead state action, and the Court does not further address this issue.

**1452**

son, 6 F.3d 683, 686 (10th Cir.1993) *cert. denied,* 510 U.S. 1093, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Defendants argue that plaintiffs fail to allege either a conspiracy or legally sufficient class-based animus.

■ To prove the existence of a conspiracy under Section 1985(3), plaintiffs must allege facts which show a mutual understanding or meeting of the minds amongst the conspirators. *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230–31 (10th Cir.1990) (civil conspiracy requires combination of two or more persons acting in concert), *Green v. State Bar of Texas,* 27 F.3d 1083, 1089 (5th Cir.1994); *Taliaferro v. Voth,* 774 F.Supp. 1326, 1332 (D.Kan.1991). Plaintiffs have alleged facts showing a meeting of the minds which, if proven, establishes the existence of a conspiracy. *See Plaintiffs' Second Amended Complaint* (Doc. #152), ¶18 (alleging that Doering knew he had no right to conspire with Sheriff Vaughn to deprive plaintiffs of their property), ¶20 (alleging that defendants perpetrated a conspiracy and oppression of plaintiffs' rights), ¶23 (alleging that Bernard Lickteig and Mike Lickteig conspired to deprive plaintiffs of their property), ¶29 (citing language of 42 U.S.C. § 1985), ¶36 (alleging that Solander, Feuerborn, the Lickteigs, and Doering conspired with state actors), and ¶42 (alleging that Doering, Solander, Feuerborn and Sheriff Vaughn conspired to search and seize plaintiffs' property).

■ The Court agrees, however, that plaintiffs have not alleged legally sufficient class-based animus. This ground is well trodden, for it is well established that Section 1985(3) does not apply to all tortious, conspiratorial interferences with the rights of others, but only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin,* 403 U.S. at 101–02. The Tenth Circuit Court of Appeals has strictly construed this requirement, noting as follows:

> The other "class-based animus" language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or

commercial bias. *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL—CIO v. Scott,* 463 U.S. 825, 837, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). In fact, the Supreme Court has held that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." *Id.* at 836.

*Tilton,* 6 F.3d at 686.

■ Plaintiffs seek to establish "class-based, invidiously discriminatory animus" by arguing that Hall is disabled and that Mrs. Hall is a disabled, retired, female octogenarian who "enjoys pauper status" and is "totally incapable under the law of defending herself." *Plaintiffs' Second Amended Complaint* (Doc. #152), ¶32. None of these allegations are sufficient to establish plaintiffs' membership in a class for purposes of Section 1985.

■ The disabled are not a class for the purposes of Section 1985. *Wilhelm v. Continental Title Co.,* 720 F.2d 1173, 1176–77 (10th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984) (class of "handicapped persons" not contemplated in Civil Rights Act of 1871 and not included in what is now Section 1985(3)). Nor are the impoverished a class for purposes of Section 1985. *United Bhd. of Carpenters & Joiners of America, Local 610, AFL—CIO v. Scott,* 463 U.S. 825, 837, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Tilton,* 6 F.3d at 686 ("class-based animus" requirement does not include conspiracies motivated by economic or commercial bias); *see also Des Vergnes v. Seekonk Water Dist.,* 601 F.2d 9, 13 (1st Cir.1979) (Section 1981 addresses racial discrimination, not economic class discrimination or civil rights violations with no racial aspect) and *McLellan v. Mississippi Power & Light Co.,* 526 F.2d 870 (5th Cir.1976) (Section 1985(3) available to class of individuals seeking bankruptcy when subject to class-based discrimination), *vacated in part,* 545 F.2d 919, 933 (1977) (declining to enlarge ambit of section 1985(3) to include bankrupts).

■ An allegation that defendants conspired against Mrs. Hall because of her sex

is also unavailing as a matter of law. As the Supreme Court has noted, the "animus" requirement demands at least a purpose that focuses upon women by reason of their sex. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269–70, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (anti-abortion demonstrations not directed specifically at women reflect no animus against women in general or against class of women seeking abortion); *Harrison v. Brooks,* 519 F.2d 1358, 1359–60 (1st Cir.1975) (complaint must allege facts which show that defendants conspired against plaintiffs because of membership in class and that criteria which defined class were invidious). In this case, however, both Hall and his mother were targets of the alleged conspiracy. Because they are of different sexes, plaintiffs cannot properly allege a gender-based conspiracy against either Mrs. Hall or George Hall. The same deficiency infects plaintiffs' claim that Mrs. Hall is in a protected class because she is an octogenarian.

Plaintiffs apparently claim violations of subsections (2) and (3) of 42 U.S.C. § 1985. Plaintiffs do not expressly allege conspiracies to intimidate witnesses or obstruct justice, or other facts which are consistent with a cause of action under the portion of subsection (2) which precedes the semicolon. Accordingly, the Court denies any claim under that portion of subsection (2).

Plaintiffs allege that defendants conspired to obstruct justice with intent to deny their equal protection rights, and seek to state a claim under that portion of Section 1985(2) which follows the semicolon. The same class-based discriminatory animus requirement applies. *Lessman v. McCormick,* 591 F.2d 605, 608 (10th Cir.1979) (citing *Smith v. Yellow Freight System, Inc.,* 536 F.2d 1320 (10th Cir.1976)). Because plaintiffs have not alleged legally sufficient class-based animus, this aspect of their claim must also be dismissed.

### C. Claims Under RICO

Plaintiffs allege that defendants violated civil RICO, 18 U.S.C. §§ 1961–1965. That Act makes it unlawful for "any person employed by or associated with an enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity ... " 18 U.S.C. § 1962(c). A violation of RICO requires conduct of an enterprise through a pattern of racketeering activity. *Salinas v. United States,* —— U.S. ——, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); *Sedima v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In the Tenth Circuit, plaintiffs must allege with particularity each element of a RICO violation and its predicate acts of racketeering, a requirement which is justified by the threat of treble damages and injury to reputation. *Farlow v. Peat, Marwick Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir.1992); *see also* Fed.R.Civ.P. 9(b). Moreover, "the Rule of pleading with particularity requires assertions of time, place, and contents of false representations ... [and] the identity of the person making the representation and what was obtained or given up thereby." *Meyer v. Cloud County Bank & Trust,* 647 F.Supp. 974, 975–76 (D.Kan.1986).

Plaintiffs' RICO claim fails under these pleading requirements. First, plaintiffs do not sufficiently allege a predicate racketeering activity as to any named defendant. Plaintiffs complain that Feuerborn signed the letter which authorized defendants to move the conservatorship horses. Even if this act constituted mail or wire fraud, plaintiffs do not allege that they relied on the document, or that they even saw it before defendants stole the horses. *See O'Malley v. O'Neill,* 887 F.2d 1557 1561 (11th Cir.1989), *cert. denied,* 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990). Plaintiffs allege that Solander told Hall that he had a conflict of interest, that he was too busy to meet with Hall, and that he prepared the document which Feuerborn signed. Solander's conduct cannot constitute mail or wire fraud because plaintiffs do not allege any use of mails or wires. Plaintiffs allege that Doering sent two letters to Mrs. Hall and Sheriff Vaughn, but they do not allege that either letter contained false statements. Furthermore, even if the letters constituted a predicate offense, plaintiffs have not alleged that they relied on the letters to their detriment. Finally, as to the Lickteigs, plaintiffs allege no conduct that constitutes mail or

wire fraud, and they do not allege that they relied on any statements by the Lickteigs.

█ For these reasons alone, plaintiffs' RICO claims must be dismissed. Even if plaintiffs had sufficiently alleged a predicate racketeering activity, however, their RICO claims would fail for other reasons. For example plaintiffs do not properly allege a "pattern" of racketeering activity. A "pattern" presumes repeated activity, not merely repeated acts to carry out the same scheme. *Meyer*, 647 F.Supp. at 974–75; *see also Northern Trust Bank/O'Hare v. Inryco Inc.*, 615 F.Supp. 828, 831 (N.D.Ill.1985). Plaintiffs allege only repeated acts to carry out one scheme—ACFG's deprivation of plaintiffs' civil and property rights—rather than repeated activity. The Supreme Court has held that to establish a "pattern" under RICO, a plaintiff must show that the predicates themselves amount to or otherwise constitute a threat of continuing racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). As the Supreme Court noted in *H.J. Inc.*:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*Id.* at 241–42.

The question here, as it was in *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir.1990), is whether plaintiffs have alleged facts showing sufficient continuity to sustain their RICO claim. The answer is that they have not. Plaintiffs allege that defendants and the ACFG acted together to search and steal plaintiffs' property and deprive them of their right to due process of law. Clearly this involves no open-ended threat of future illegal activity: defendants and the ACFG cannot deprive plaintiffs of property and rights which they no longer possess. While plaintiffs may have alleged a closed-ended series of predicate acts, they constituted a single scheme to accomplish "one discrete goal," directed solely at plaintiffs, with no potential to extend to other persons or entities. *See Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1273–74 (10th Cir.1989); *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928–29 (10th Cir.1987) (scheme to achieve single discrete objective does not create threat of ongoing activity, even when goal is pursued by multiple illegal acts, because scheme ends when purpose is accomplished).

Accordingly, plaintiffs have failed to meet the pleading requirements under civil RICO, and they thus have failed to state a claim upon which relief can be granted.

### D. State Law Claims

Based on the assumption that all federal claims would be dismissed, defendants have argued that the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367(c)(3). That statute provides that a district court may decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction under 28 U.S.C. § 1331, Defendants' assumption has proven to be incorrect. Certain defendants advance further reasons why the state claims should be dismissed, and the Court addresses each in turn.

### 1. Fraud

The second amended complaint alleges that on or about April 17, 1995, plaintiffs contacted Solander, gave him the letter which outlined the dispute between Bernard Lickteig and Mrs. Hall, and communicated plaintiffs' concern that Bernard Lickteig was a violent individual (¶¶ 6, 7 and 54); and that during the following four days, Solander assured plaintiffs that "Lickteig had been contacted and told to stay off plaintiffs', [sic] farm the matter would be handled through the courts, and not threaten or harm plaintiffs in any way [sic]" (¶ 8). Plaintiffs allege that Solander knew that this representation was false and should have so informed plain-

tiffs. (¶ 8). Plaintiffs also allege that between April 17 and April 21, 1995, Solander told plaintiff "the matter was civil and ... he should get an attorney and go through the courts" (¶ 9), and that "he [Solander] had a conflict and/or was otherwise busy to handle the matter" until the following week (¶¶ 54–55). Plaintiffs claim that the latter representation "proved to be false," in that on April 23, 1995, Solander then drafted the document whereby Feuerborn authorized Bernard Lickteig and Mike Lickteig to move the conservatorship horses (11 57 and 63). According to plaintiffs, the representation was also false when made, in that Solander "then proceeded to conspire against Plaintiffs by contacting Kathy Feuerborn and working in concert with Steve Doering by formulating a scheme whereby they could defraud Plaintiff out of Plaintiff's personal property" (¶ 62). Plaintiffs allege that "[i]t was reasonable to rely" on Solander's representations because "Solander's name was given to Plaintiff by David Vaughn as representing him against Bernard Lickteig [and] he had some involvement with the horses through Kathy Feuerborn."

The second amended complaint also alleges fraud by Bernard Lickteig. Plaintiffs allege that between April 17 and April 21, 1995, Bernard Lickteig advised Hall that "he could not resolve the matter between Mary Hall" as he was too busy until the following week (¶ 50). Plaintiffs claim that this representation "proved to be false," in that on April 22, 1995, Bernard Lickteig trespassed on plaintiffs' farm, removed property, etc. (¶ 52).

Solander asks the Court to dismiss plaintiffs' fraud claims because (1) as an attorney, Solander had no duty to disclose anything to plaintiffs; (2) plaintiffs have not alleged that they would have done anything differently if Solander had made additional disclosures; and (3) plaintiffs do not allege that the misrepresentation, if any, was material. Bernard Lickteig also seeks dismissal, arguing that plaintiffs have failed to allege facts sufficient to state an actionable claim.

Under Fed.R.Civ.P. 9, allegations of fraud must be pleaded with particularity. Under Kansas law, plaintiffs in a fraud case must prove by clear and convincing evidence five elements: (1) an untrue statement of fact, (2) known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, (3) where another party justifiably relies on the statement to his or her detriment and (4) acts to his injury and (5) damage. *Albers v. Nelson*, 248 Kan. 575, 579, 809 P.2d 1194, 1198 (1991); *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 465–67, 738 P.2d 1210, 1228–30 (1987); *Moore v. State Bank of Burden*, 240 Kan. 382, 389, 729 P.2d 1205, 1211 (1986); *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545, 551–52 (1980). Stated otherwise, to make an actionable case for fraud, plaintiffs must plead and prove misrepresentations of fact known by defendant to be untrue, or made with reckless disregard for the truth, and plaintiffs must have reasonably relied upon the misrepresentations to their detriment. *Tetuan v. A.H. Robins Co.*, 241 Kan. at 467, 738 P.2d at 1230.

In this case, plaintiffs allege three factual misrepresentations by Solander: (1) that Bernard Lickteig had been contacted and told to stay off plaintiffs' farm and not threaten or harm them; (2) that the matter was "civil";[6] and (3) that he had a conflict and/or was otherwise too busy to handle the matter until the following week. As to Bernard Lickteig, plaintiffs allege one factual misrepresentation: that Bernard Lickteig told Hall that "he could not resolve the matter between Mary Hall" as he was too busy until the following week. Even if we assume, arguendo, that plaintiffs have satisfied their burden with respect to the first two elements of their fraud claim, they have failed to allege facts which show either that they relied to their detriment upon Bernard Lickteig's alleged misrepresentation or that they suffered damages therefrom. From the facts set forth in the second amended complaint, the adversarial nature of the relationship between plaintiffs and Bernard Lickteig is clear and absent explicit allegations to the con-

**6.** Solander's statement that George Hall should get an attorney and go through the courts must be construed as a statement of advice or opinion rather than a statement of fact.

trary, the facts do not support a reasonable inference that plaintiffs justifiably relied to their detriment on Bernard Lickteig's statement that "he could not resolve the matter between Mary Hall" as he was too busy until the following week. Furthermore, the second amended complaint does not address the requirement that plaintiffs' reliance must have been detrimental, that is, that they must have acted to their injury in reliance on his misrepresentation.

Plaintiffs' claims against Solander are equally infirm. While plaintiffs claim that "[i]t was reasonable to rely" on Solander's representations, they do not allege that they did so to their detriment. Nor can the Court infer from facts contained in the second amended complaint that plaintiffs *justifiably* relied on what Solander (who was counsel for Feuerborn) said about Bernard Lickteig (whose lawyer was Doering) or even the state of his own personal schedule.

For these reasons, the Court finds that plaintiffs have failed to state actionable claims for fraud against Solander and Bernard Lickteig.

### 2. Conspiracy To Commit Fraud

The second amended complaint alleges that on or about April 17, 1995, plaintiffs contacted Doering, Bernard Lickteig, and Solander, regarding the dispute between Bernard Lickteig and Mrs. Hall (¶¶ 59–60 and 62); that Doering, Bernard Lickteig and Solander told plaintiffs that they had a conflict and/or were too busy to handle the matter until the following week (¶¶ 60 and 62); and that these representations were false, in that Doering, Bernard Lickteig and Solander immediately began to conspire with each other and with Feuerborn and Vaughn to gain an unfair and illegal advantage over Mrs. Hall, and illegally deprive plaintiffs of personal property (¶¶ 60–62).

Bernard Lickteig argues in 35 words or less that plaintiffs' claim for conspiracy to commit fraud does not state a claim upon which relief can be granted. He cites no authority for his argument, and the Court is uninformed of any reasoning on which his position is based. While he may ultimately be correct, his brief is required to articulate

his position in a format which "shall refer to all statutes, rules and authorities relied upon." D.Kan. Rule 7.6(a)(4).

Solander asks the Court to dismiss any claim of fraud—including, of course, the claim of conspiracy to commit fraud. Solander's brief likewise fails to comply with D.Kan. Rule 7.6(a)(4), and the Court has limited its analysis to the grounds which are actually argued in Solander's motion to dismiss, *i.e.*, the fraud allegations which are particular to him as opposed to his co-conspirators.

Consequently, the Court holds that the motions to dismiss plaintiffs' claims for conspiracy to defraud, filed on behalf of Solander and Bernard Lickteig, should be overruled.

### 3. Intentional Infliction of Emotional Distress

In their second amended complaint, plaintiffs allege that defendants are liable for intentional infliction of emotional distress because "[d]efendants and each of them acted with disregard to the effect that their actions from April 17, 1995 through present would have on Plaintiffs, an 81 year old woman in the twilight of her years and a 53 year old retired man" (¶ 49). They further allege that "[d]efendants knew by the sheer fact of their ongoing conspiracy in violation of Plaintiffs [sic] civil rights that such a chronic endeavor would have a material psychological debilitating effect on Defendants [sic]" (¶ 49). More specifically, plaintiffs allege that defendants each knew "by their cameo participation and continued participation and deception," and by the fact that Doering and Bernard Lickteig refused to deliver titles to two trucks, that they would "necessarily inflict a grievous intentional emotional distress upon Plaintiffs" (¶¶ 140–141).

Solander, Feuerborn and the Lickteig defendants argue that plaintiffs' claim for intentional infliction of emotional distress should be dismissed because it does not allege conduct which rises to the level of extreme and outrageous conduct under Kansas law.

The following four elements must be alleged to establish a claim of intentional infliction of emotional distress: (1) defendant's conduct must be intentional or in reckless disregard of plaintiffs; (2) defendant's conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiffs' mental distress; and (4) plaintiffs' mental distress must be extreme and severe. *Anspach v. Tomkins Indus., Inc.,* 817 F.Supp. 1499, 1506 (D.Kan.1993); *Taiwo v. Vu,* 249 Kan. 585, 592, 822 P.2d 1024 (1991); *Roberts v. Saylor,* 230 Kan. 289, 292–93, 637 P.2d 1175, 1179 (1981). To constitute extreme and outrageous conduct, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Roberts v. Saylor,* 230 Kan. at 293, 637 P.2d at 1179.

The tort of outrage is not favored under Kansas law, and the Court's reading of plaintiffs' complaint does not support a logical inference that the conduct of Solander, Feuerborn or the Lickteig defendants was so extreme and outrageous "as to go beyond the bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* To succeed on a claim of outrage, as a threshold matter, plaintiffs must show that the challenged conduct may reasonably be regarded as so extreme and outrageous as to permit recovery and that they suffered emotional distress so severe the law must intervene because no reasonable person would be expected to endure it. *Moore v. State Bank of Burden,* 240 Kan. 382, 388, 729 P.2d 1205, 1211 (1986). "[M]ere insults, indignities, threats, annoyances, petty expressions, or other trivialities" do not rise to the level of outrageous conduct. *Roberts v. Saylor* 230 Kan. at 293, 637 P.2d at 1179.

The factual allegations in this case—divorced from the hyperbole and inflammatory rhetoric which plaintiffs so cavalierly invoke—reveal a contract between Bernard Lickteig and Mrs. Hall, a dispute regarding non-performance by Bernard Lickteig, and a non-violent self-help repossession of horses.

While plaintiffs claimed a security interest in the horses, they did not own them, and the parties dispute whether and under what circumstances defendants were entitled to remove horses and other property from plaintiffs' farm. Viewing such facts in the light most favorable to plaintiffs, the Court understands that plaintiffs might reasonably feel betrayed, tricked, or violated. On the other hand, it appears that Solander's involvement occurred in the course of his practice of law, and was limited to untrue statements that Bernard Lickteig had been directed to stay off plaintiffs' farm and refrain from threatening or harming them, and that he had a conflict and/or was too busy to address the matter until the following week, that the dispute was civil, and that George Hall should get an attorney and go through the courts. Such statements, even when viewed in light of the conclusory allegations regarding Solander's conspiracy with his co-defendants, cannot be characterized as so extreme and outrageous as to permit recovery under the tort of outrage.

The same is true of the allegations regarding Feuerborn and her authorization concerning the removal of conservatorship horses, and the further allegation that the Lickteig defendants (non-violently) helped themselves to horses in which plaintiffs claimed a security interest and otherwise violated plaintiffs' rights. In determining whether the challenged conduct may *reasonably* be regarded as so extreme and outrageous as to permit recovery and whether plaintiffs allege emotional distress which is so severe that the law must intervene because no reasonable person would be expected to endure it, the Court must walk a fine line between trivializing plaintiffs' claim on the one hand, and—on the other hand—exaggerating the gravity of plaintiffs' claim on account of the beguiling rhetoric with which they describe it. On this record, even viewing the facts in the light most favorable to plaintiffs, defendants' conduct does not support a claim of outrage. Their motions to dismiss this claim are granted.

### 4. Negligent Infliction of Emotional Distress

Solander, Feuerborn and the Lickteig defendants also argue that plaintiffs'

claim for negligent infliction of emotional distress must be dismissed because while the second amended complaint alleges that certain non-parties (Vaughn and Kersley) brutally assaulted George Hall, it does not allege that Solander, Feuerborn or the Lickteig defendants personally caused physical injury to either plaintiff. Kansas law has long held that there can be no recovery for emotional distress caused by the negligence of another unless accompanied by or resulting in physical injury. *E.g., Schweitzer–Reschke v. Avnet, Inc.,* 874 F.Supp. 1187, 1196 (D.Kan. 1995); *Anspach v. Tomkins Indus., Inc.,* 817 F.Supp. at 1509; *Payne v. General Motors Corp.,* 731 F.Supp. 1465, 1474 (D.Kan.1990); *Humes v. Clinton,* 246 Kan. 590, 598, 792 P.2d 1032, 1038 (1990). The purpose of the physical injury rule is to guard against fraudulent or exaggerated claims, *Maddy v. Vulcan Materials Co.,* 737 F.Supp. 1528, 1534 (D.Kan.1990); it also recognizes that emotional distress is a common experience in life and is usually trivial, *Freeman v. Kansas State Network Inc.,* 719 F.Supp. 995, 1001 (D.Kan.1989).

In this case, plaintiffs' claim for negligent infliction fails as a matter of law because plaintiffs have not alleged negligent conduct. It should go without saying that in order to recover for negligent infliction of emotional distress, plaintiffs must allege and prove negligent conduct. *Tyrrell v. Boeing Co.,* 1994 WL 114841 (D.Kan.1994). In this case, plaintiffs' complaints relate exclusively to intentional misconduct. In addition, plaintiffs' do not allege that Solander, Feuerborn or the Lickteig defendants caused physical injury to either plaintiff. The Court has carefully reviewed the second amended complaint and finds no allegations which are sufficient to support a claim for negligent infliction of emotional distress.

### 5. Intentional Interference With Prospective Business Relations

The second amended complaint alleges that when Bernard Lickteig closed the escrow with Mrs. Hall in October of 1994, he should have delivered titles to two trucks and a mobile home (¶ 64); that a state district court ordered Doering to deliver the titles in April of 1996 (¶¶ 65–66); that defendants knew that the truck titles were vital because Mrs. Hall needed the trucks in her antique business (¶ 66); that Mrs. Hall conveyed the truck to George Hall, who spent $6,000 repairing the trucks (¶ 67); and that Doering still refuses to convey the titles (¶ 67).

The Lickteig defendants argue, this time in 25 words or less, that plaintiffs' claim for intentional interference with prospective business relations does not state a claim upon which relief can be granted. They cite no legal basis for their argument, and the Court is again uninformed of the grounds for their position. Again, while defendants may ultimately be correct, their brief is required to argue their position in a format which "shall refer to all statutes, rules and authorities relied upon." D.Kan.Rule 7.6(a)(4). Defendants' motion to dismiss the claim on this ground is therefore overruled.

The Lickteig defendants also argue that the doctrine of res judicata entitles them to dismissal of the claim for intentional interference with prospective business relations. They correctly perceive that this argument is one better addressed under Fed.R.Civ.P. 56, because it depends upon facts outside the four corners of plaintiffs' complaint. As a motion to dismiss, the motion must be overruled.

### MOTION FOR SUMMARY JUDGMENT

Plaintiffs' claim against Feuerborn derives solely from the fact that she signed the letter which authorized Bernard Lickteig and Mike Lickteig to move the conservatorship horses. On July 14, 1995, Mrs. Hall sued Feuerborn in the District Court of Anderson County, Kansas, claiming that in signing the letter, Feuerborn had breached a fiduciary duty that she owed to Mrs. Hall as a member of the public. Mrs. Hall also claimed trespass, theft, breach of the covenant of good faith and fair dealing, and negligence. On March 4, 1996, the state court dismissed the suit, holding that Feuerborn had acted within her legal authority in signing the letter.

Feuerborn argues that under the doctrine of res judicata, she is entitled to judgment because the state court held that she had validly exercised her legal power as conser-

vator when she signed the document in question. Solander argues that as the attorney who prepared the document for Feuerborn, he is "derivatively" entitled to judgment as a matter of law on res judicata grounds. Both defendants seek summary judgment on this issue.[7]

Res judicata includes both claim preclusion and issue preclusion. Issue preclusion, or collateral estoppel, prevents relitigation of an issue by a party against whom the issue has been conclusively determined in a prior action. *American Home Assurance Co. v. Pacific Indem. Co.*, 672 F.Supp. 495, 498 (D.Kan.1987); *Crutsinger v. Hess*, 408 F.Supp. 548, 551 (D.Kan.1976); *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122, 128 (1988); *see also Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir.1997). Claim preclusion, on the other hand, prevents parties or their privies from relitigating a cause of action that has been finally adjudicated by a court of competent jurisdiction. *American Home Assurance v. Pacific Indem. Co.*, 672 F.Supp. at 498; *Crutsinger v. Hess*, 408 F.Supp. at 551. It applies not only to claims that were actually litigated, but also to claims that should have been litigated in the first action but were not. *American Home Assurance v. Pacific Indem. Co.*, 672 F.Supp. at 498; *Jackson Trak Group, Inc. v. Mid States*

*Port Authority*, 242 Kan. at 690, 751 P.2d at 128; *Penachio v. Walker*, 207 Kan. 54, 56–57, 483 P.2d 1119, 1121 (1971); *see also Phelps v. Hamilton*, 122 F.3d at 1320. Claim preclusion is a bar to a second action upon the same claim, demand, or cause of action. *Penachio v. Walker*, 207 Kan. at 57, 483 P.2d at 1121. It is founded upon the principle that the party, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. *Id.; see also Griffith v. Stout Remodeling, Inc.*, 219 Kan. 408, 548 P.2d 1238, 1240 (1976) (where two actions bottomed on same set of facts, final adjudication on merits in earlier action generally res judicata in later one). If a plaintiff fails to present all grounds or theories for relief arising from the single wrong, he may not split the cause of action or claim by bringing a subsequent suit that alleges new theories. *Parsons Mobile Prods., Inc. v. Remmert*, 216 Kan. 138, 140, 531 P.2d 435, 437 (1975); *Carter v. City of Emporia*, 815 F.2d 617, 621–22 (10th Cir.1987), quoting *Pretz v. Lamont*, 6 Kan.App.2d 31, 33–36, 626 P.2d 806, 808–10 (1981); *see also Oxbow Energy, Inc. v. Koch Indus., Inc.*, 686 F.Supp. 278, 282 (D.Kan.1988) (all claims arising out of single wrong must be prosecuted in one action).

7. Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 893 (10th Cir.1994). Summary judgment is inappropriate, however, if

there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323 (emphasis in original). Once the moving party properly supports its motion, the nonmoving party may not rest upon mere allegation or denials of his or her pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir.1993). The Court reviews the evidence in a light most favorable to the nonmoving party, *e.g.*, *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson*, 477 U.S. at 255.

■ As noted above, the doctrine of res judicata precludes the parties from relitigating issues that were *or could have been* raised in the prior action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Klein v. Zavaras,* 80 F.3d 432, 434 (10th Cir.1996). In *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 83–85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Supreme Court reiterated that under the full faith and credit provision of 28 U.S.C. § 1738, a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. It also held that notwithstanding concerns that state courts were not adequately protecting individual rights, prior state court judgments should not receive "less than normal" preclusive effect in a subsequent suit under 42 U.S.C. § 1983. 465 U.S. at 81. Plaintiff in *Migra* urged the Supreme Court to limit this rule, as originally stated in *Allen v. McCurry,* so that in subsequent federal actions under Section 1983, state court judgments would have preclusive effect only with respect to issues which had been actually litigated in state court. Dismissing the expressed concern over the adequacy of state courts as protectors of federal rights, the Supreme Court rejected this argument and held that Section 1983 did not prevent the judgment in plaintiff's state court proceeding from creating a claim preclusion bar in federal court. 465 U.S. at 83; *see, e.g., England v. Louisiana State Bd. of Med. Examiners,* 375 U.S. 411, 419, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Rogers v. Desiderio,* 58 F.3d 299, 300 (7th Cir.1995) (to discourage claim-splitting, judges award plaintiffs not the better outcome, but the first outcome: "whichever suit goes to judgment first is dispositive, and the doctrine of claim preclusion (res judicata) requires the other court to dismiss the litigation."). *But cf. Morgan v. City of Rawlins,* 792 F.2d 975, 978–980 (10th Cir.1986) (applying Wyoming claim preclusion law, but finding that where factual issues under Section 1983 were not focus of prior state proceeding, plaintiff did not have full and fair opportunity to litigate federal claim and claim pre-

clusion did not bar action under Section 1983).

*Carter v. City of Emporia, Kansas,* 815 F.2d 617 (10th Cir.1987), is instructive. There, plaintiffs filed suit under Section 1983, attaching pendent state law claims, in federal court. Plaintiffs later sued the same defendants in state court, asserting only state law claims. The state action ended in summary judgment, and the federal district court then granted summary judgment on the ground of claim preclusion. The Tenth Circuit Court of Appeals, applying Kansas claim preclusion law, affirmed. 815 F.2d at 619. In doing so, it noted that even when the requirements of claim preclusion are met, the court must evaluate whether plaintiffs have had a full and fair opportunity to litigate their claims before a court with authority to adjudicate the merits of those claims. In *Carter,* it found that plaintiffs had had that opportunity:

[P]laintiffs had a full and fair opportunity to litigate their claims in a court with authority to adjudicate them. State courts have concurrent jurisdiction with federal courts over § 1983 actions.... Plaintiffs could have brought their federal claims in the state court action, or could have proceeded in the federal court in preference to the state court.

815 F.2d at 621. The *Carter* court continued as follows:

Nothing in our decisions before *Migra* suggests that plaintiffs may freely split a cause of action between federal and state courts and pursue both actions without risking claim preclusion. We recognized the claim preclusive effect of prior state court judgments on a subsequent § 1983 action in federal court in *Spence v. Latting* in 1975.

815 F.2d at 621, citing *Spence v. Latting,* 512 F.2d 93, 98–99 (10th Cir.), *cert. denied,* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975).

The Supreme Court has stated that a "full and fair opportunity" means there is "no reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana v. United States,* 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Mrs. Hall had a full and fair oppor-

tunity to litigate in state court her claims that Feuerborn denied and conspired to deny her civil rights under 42 U.S.C. §§ 1983 and 1985, violated and conspired to violate her rights under RICO,[8] and in violation of state law committed and conspired to commit fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and intentional interference with prospective business relations. In other words, Mrs. Hall could have brought her federal claims in the state court action and the record discloses no reason to doubt the quality, extensiveness, or fairness of procedures followed in state court. Also, Mrs. Hall could have obtained a federal forum for her federal claims by litigating them first in federal court. Because her claims were actually raised and fully litigated in state court, however, she has forgone the right to raise additional claims in federal court.[9] Further, if Hall is in privity with Mrs. Hall with respect to his claims against Feuerborn, the doctrine of claim preclusion will bar him from asserting claims against Feuerborn in this Court.

■ As noted above, principles of res judicata apply not just to the parties to the prior action, but to others with whom they are in privity. Thus any party deemed to be in privity with Mrs. Hall will be barred from asserting further claims in this suit. The Kansas Supreme Court has stated that "a person who is not a party but who controls an action ... is bound by the adjudication of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction." *Phelps v. Hamilton*, 122 F.3d at 1319 ("control" means ability to exercise effective choice as to legal theories and proofs to be advanced and control over opportunity to appeal). While George Hall was not a party to the prior suit, he alleges co-ownership of the relevant property with Mrs. Hall and maintains that he suffered the same injuries and deprivations that she did.[10] Moreover, he controlled both the prior state court action and the present one. *See* plaintiffs' original complaint (Doc. # 1) filed April 18, 1997, Exhibit A, at 3 (letter from Hall to Doering which states, "I represent my mother in these matters, have her concurrence and will speak on her behalf."). From the allegations of the second amended complaint, the Court must infer that Hall has a financial interest in the outcome of this case and that his financial interest extended to the outcome of the earlier case. He does not deny that he controlled both the prior action and the present action. He clearly was in privity with Mrs. Hall. *See also Cauefield v. Fidelity & Cas. Co.*, 378 F.2d 876 (5th Cir.1967) (plaintiffs barred from litigating second suit because plaintiffs participated as witnesses in first suit, which resulted in judgment deny-

---

**8.** *See Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (state courts have concurrent jurisdiction over civil RICO claims).

**9.** Plaintiffs contend that the state court order which found as a matter of law that Mrs. Hall had stated no cause of action against Feuerborn was not a final judgment on the merits and that it thus lacks preclusive effect. Plaintiffs are in error. The Kansas rule of civil procedure regarding involuntary dismissal specifically provides that "[u]nless the court in its order for dismissal otherwise specifies ... [a dismissal] other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party ... operates as an adjudication upon the merits." K.S.A. § 60–241 (1997). Here the state court order in *Hall v. Feuerborn*, Case No. 95–C–35, is a signed journal entry, filed with the clerk of the court. It is clearly an effective judgment. *See* K.S.A. § 60–258 ("No judgment shall be effective unless and until a journal entry or judgment form is signed by the trial judge and filed with

the clerk of the court"); K.S.A. § 60–254 ("A judgment is the final determination of the rights of the parties in an action"); *see also Phelps v. Hamilton*, 122 F.3d at 1318 (where court has jurisdiction of parties and subject matter and renders judgment within its competency, such judgment is final and conclusive unless corrected or modified upon appeal). No appeal having been taken, the Anderson County adjudication constituted a final judgment on the merits. *See, e.g., Kansas v. Parson*, 15 Kan.App.2d 374, 376, 808 P.2d 444, 446 (1991).

**10.** The second amended complaint alleges that Mrs. Hall purchased the farm but it is far from clear in alleging ownership of the farm, the horses, the security interests, and the other personal property which defendants allegedly stole. Resolving this ambiguity in favor of the *pro se* plaintiffs, we read the complaint as alleging joint or common ownership. If Hall were not a co-owner, he would appear to lack standing to assert many of the claims advanced in this suit.

ing similar claim); *Garcia v. Wilson*, 63 Wash.App. 516, 519–23, 820 P.2d 964, 966–68 (1991) (plaintiff barred from relitigating issues determined in first suit because plaintiff appeared as witness in first suit, knew about first suit and did not participate). Accordingly, the doctrine of claim preclusion bars Hall from asserting claims against Feuerborn in this Court.

 Solander argues that the doctrine of claim preclusion also bars plaintiffs' claim against him "derivatively," as Feuerborn's attorney. Under Kansas law governing res judicata, a person who was not a party to a prior case can raise a judgment in that prior case as a bar to a subsequent action if the liability of that person is dependent upon the liability in the first case. *See, e.g., Richardson v. Erwin*, 174 Kan. 314, 255 P.2d 641 (1953) (plaintiff lost suit against driver, then sued driver's father in second case, for negligent entrustment; second suit barred, even though father not party thereto, because father's liability depended on actionable negligence by son). In this case, Solander's liability is to some extent dependent upon Feuerborn's liability, because he prepared the letter which Feuerborn signed. Under Kansas agency law, a judgment in favor of a principal is conclusive between the plaintiff and an agent of the principal.[11] *Hardy v. Miller*, 131 Kan. 65, 289 P. 952 (1930) (settlement of claim against corporation and final judgment entered against corporation conclusive in a later claim against managing officers of corporation). To the extent that the state court found that Feuerborn acted within her legal capacity in executing the document, it follows that her attorney cannot be liable for drafting the document at her request. Accordingly, plaintiffs cannot relitigate against Solander the issue whether Feuerborn validly exercised her legal power as conservator when

she signed the document which authorized Bernard Lickteig and Mike Lickteig to move the conservatorship horses. This holding, however, does not entirely dispose of plaintiffs' claims against Solander. Solander has not demonstrated that he is entitled to invoke the doctrine of claim preclusion, so as to prevent plaintiffs from relitigating other issues against him.

**IT IS THEREFORE ORDERED** that the *Motion For Summary Judgment of Terry Solander and Kathy Feuerborn* (Doc. # 167) filed October 24, 1997, be and hereby is sustained as to Kathy Feuerborn and **sustained in part** as to Terry Solander to the extent that plaintiffs cannot relitigate against Solander the issue whether Feuerborn validly exercised her legal power as conservator when she signed the document which authorized Bernard Lickteig and Mike Lickteig to move the horses in question. In all other respects, said motion should be and hereby is **overruled**.

**IT IS HEREBY FURTHER ORDERED** that the *Motion of Terry Solander to Dismiss Plaintiffs' Second Amended Complaint* (Doc. # 168) filed October 24, 1997, be and hereby is **overruled** as to plaintiffs' claims for denial of rights and conspiracy under 42 U.S.C. § 1983 and conspiracy to commit fraud in violation of state law, and that said motion be **sustained** as to plaintiffs' claims under 42 U.S.C. § 1985, the Racketeer Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. § 1961 *et seq.*, and plaintiffs' state law claims for fraud by Solander individually, intentional infliction of emotional distress, and negligent infliction of emotional distress.[12]

**IT IS HEREBY FURTHER ORDERED** that *Defendant Steve Doering's Motion To Dismiss Plaintiffs' Second Amended Complaint* (Doc. # 169) filed October 24, 1997, be and hereby is **overruled** as to plaintiffs'

---

11. Under Kansas law, a lawyer is an agent for his client. *Brinkley v. Farmers Elevator Mut. Ins. Co.*, 485 F.2d 1283, 1286 (10th Cir.1973); *Bethany Medical Center v. Wallace, Saunders, Austin, Brown and Enochs*, 19 Kan.App.2d 1111, 1112, 880 P.2d 1289, 1290 (1994), citing *Miotk v. Rudy*, 4 Kan.App.2d 296, 300, 605 P.2d 587 (1980) ("Clearly, the relation of attorney and client is one of agency.")

12. Solander did not articulate grounds why the Court should dismiss plaintiffs' state law claims for conspiracy to defraud, and the Court did not consider the merit of his conclusory argument that that claim should be dismissed. Plaintiffs retain the following claims against Solander: denial of rights and conspiracy under 42 U.S.C. § 1983 and conspiracy to commit fraud.

claims for denial of rights and conspiracy under 42 U.S.C. § 1983 and fraud, conspiracy to commit fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and intentional interference with prospective business relations in violation of state law, and that said motion be **sustained** as to plaintiffs' claims under 42 U.S.C. § 1985 and the Racketeer Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. § 1961 *et seq.*[13]

**IT IS HEREBY FURTHER ORDERED** that *Defendant Kathy Feuerborn's Motion to Dismiss Plaintiffs' Second Amended Complaint* (Doc. # 172) filed October 27, 1997 be and hereby is overruled as to plaintiffs' claims for denial of rights and conspiracy under 42 U.S.C. § 1983 and plaintiffs' state law claims for fraud, and that said motion be *sustained* as to plaintiffs' claims under 42 U.S.C. § 1985, the Racketeer Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. § 1961 *et seq.*, and plaintiffs' state law claims for intentional infliction of emotional distress, and negligent infliction of emotional distress.[14]

**IT IS HEREBY FURTHER ORDERED** that the *Separate Defendants Bernard Lickteig, Mike Lickteig and Steve Lickteig's Motion to Dismiss Second Amended Complaint and Objection to Jurisdiction* (Doc. # 173) filed October 27, 1997, be and hereby are overruled as to plaintiffs' claims for denial of rights and conspiracy under 42 U.S.C. § 1983, conspiracy to commit fraud, and intentional interference with prospective business relations in violation of state law (a claim asserted against Bernard Lickteig only), and that said motion be **sustained** as to plaintiffs' claims under 42 U.S.C. § 1985, the Racketeer Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. § 1961 *et seq.*, and plaintiffs' state law claims for fraud

by Bernard Lickteig, intentional infliction of emotional distress, and negligent infliction of emotional distress.[15]

**IT IS HEREBY FURTHER ORDERED** that the *Motion For Extension of Time to File Dispositive Motions* (Doc. # 199) which Steven B. Doering, Bernard Lickteig, Steven L. Lickteig, Mike Lickteig, Terry Solander and Kathy Feuerborn filed on December 30, 1997, be and hereby is **sustained in part,** in that the deadline for filing dispositive motions in this case be and hereby is extended until **January 9, 1998,** in order that the parties may address and incorporate in their dispositive motions the foregoing analysis.

### MEMORANDUM AND ORDER

In its *Memorandum and Order* (Doc. # 200) entered January 5, 1998, the Court addressed the parties' various motions to dismiss *Plaintiffs' Second Amended Complaint* (Doc. # 152) filed October 9, 1997. This matter comes before the Court on plaintiffs' *Motion For Reconsideration* (Doc. # 222) filed January 16, 1998. In that motion, plaintiffs abandon their claims under RICO and 42 U.S.C. § 1985, but ask the Court to reconsider its rulings with respect to 42 U.S.C. § 1983 and plaintiffs' claims under state law. Specifically, plaintiffs claim that they have new evidence related to the litigation between Mary Hall and Bernard Lickteig and that because plaintiffs did not know all of the relevant facts at the time Mrs. Hall filed suit in the District Court of Anderson County, Kansas, doctrines relating to res judicata, issue preclusion and claim preclusion do not apply. Plaintiffs allege that before they procured the "new evidence," the law of res judicata did not require them to "maliciously and wildly" pursue the claims which they now seek to bring in this case.

---

13. Plaintiffs retain the following claims against Doering: denial of rights and conspiracy under 42 U.S.C. § 1983; fraud, conspiracy to commit fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and intentional interference with prospective business relations in violation of state law.

14. Because of the Court's ruling on Feuerborn's res judicata defense, plaintiffs retain no actionable claims against her.

15. Plaintiffs retain the following claims against the Lickteig defendants: denial of rights and conspiracy under 42 U.S.C. § 1983; conspiracy to commit fraud, and intentional interference with prospective business relations in violation of state law (the latter claim being advanced only against Bernard Lickteig).

Having considered the arguments of record, the Court finds that plaintiffs' motions must be overruled for the reasons stated below.

First, aside from a letter from Steve Doering to Attorney General Carla Stovall dated October 21, 1996, the so-called "new evidence" is not new in any sense that is material to this lawsuit. While the evidence may be somewhat new to plaintiffs, in that they did not have copies of the relevant letters when they filed suit in state court, the evidence was clearly available through discovery in the state litigation. A proper motion to reconsider "gives the court an opportunity to correct manifest errors of law or fact and to review newly discovered evidence." *Dees v. Wilson*, 796 F.Supp. 474, 475 (D.Kan.1992); *Anderson v. United Auto Workers*, 738 F.Supp. 441, 442 (D.Kan.1990). A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence. *Clark v. Homrighous*, 136 F.R.D. 186, 188 (D.Kan.1991). In this case, plaintiffs have not established that they made diligent yet unsuccessful attempts to discover the evidence in the state court litigation. Accordingly, the Court declines to reconsider its order of January 5, 1998, based upon new evidence.

Second, having reviewed the so-called new evidence—which is attached to plaintiffs' motion—the Court finds that it is immaterial to the issues resolved in the Court's earlier order. The Court was either aware of the evidence, because it was part of the record in this case, or the Court's ruling would have been the same, without or without the evidence.

Finally, all or part of the so-called "new evidence" has been before the Court since the inception of this lawsuit, and it was part of the record which the Court considered in ruling upon the motions to dismiss on January 5, 1998. Therefore plaintiffs essentially ask the Court to reconsider matters previously presented. A motion to reconsider, however, is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed. *Voelkel v. General Motors Corp.*, 846 F.Supp. 1482, 1483 (D.Kan.), *aff'd*, 43 F.3d 1484 (10th Cir.1994). Such motions are not appropriate if the movant only wants the court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied*, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

The party moving for reconsideration has the "burden to show that there has been a change of law, that new evidence is available, or that reconsideration is necessary to correct clear error or prevent manifest injustice." *Mackey v. IBP, Inc.*, No. Civ. A. 95–2288–GTV, 1996 WL 417513, at *2 (D.Kan. July 22, 1996)(quoting *International Bhd. of Teamsters. Local 955 v. Sambol Meat Packing Co.*, No. 92–2338–JWL, 1993 WL 393010, unpublished op. at 2 (D.Kan. Sept. 30, 1993)). Plaintiffs have not discharged that burden in this case.

**IT IS THEREFORE ORDERED** that plaintiffs' *Motion For Reconsideration* (Doc. # 222) filed January 16, 1998, be and hereby is **overruled**.

**IT IS HEREBY FURTHER ORDERED** that the Clerk overrule all pending motions as moot and enter judgment in favor of defendants on the grounds articulated in the *Memorandum and Order* entered simultaneously herewith, and the *Memorandum and Order* (Doc. # 200) entered January 5, 1998.