DENNIS, Circuit Judge:
This case presents the questions of whether the seizure and destruction of the Plaintiffs’ vacant apartment buildings by the City of Dallas, as “urban nuisances,” based only on the findings and order of a panel of the City’s Urban Rehabilitation Standards Board: (1) violated the Due Process Clauses of the Fifth and Fourteenth Amendments because the owners were not given an opportunity for an adversary hearing before a neutral magistrate and a judicial determination prior to the seizure and destruction of their real property; and (2) violated the Fourth Amendment, because the City seized and destroyed the Plaintiffs’ property without a warrant issued by a magistrate based on a finding of probable cause.
A majority of this panel holds that the notice and hearings provided by the City satisfied the constitutional Fifth and Fourteenth Amendment’s guarantees against deprivation of property without due process of law. A different majority of this panel holds that the Fourth and Fourteenth Amendments were violated when the City seized and destroyed the Plaintiffs’ property without a warrant issued by a judicial officer based on probable cause. The district court’s judgment reaching the same results is affirmed.
I. FACTS AND PROCEDURAL HISTORY
Charles Freeman and Rosalyn Brown owned two apartment buildings in Dallas, *603 Texas. Ms. Brown bought the building located at 2621 Meyers Street on December 26, 1992, and filed a warranty deed in the Dallas County Deed Records on July 1, 1993. Ms. Brown bought the building located at 2611 Meyers , Street on April 11, 1993, and filed a warranty deed on August 3, 1994. Warranty deeds were filed on August 11, 1994, in which Ms. Brown transferred a one percent undivided interest in both buildings to her brother, Charles Freeman. The buildings were vacant when Ms. Brown bought them and remained unoccupied until they were demolished.
The City of Dallas established the Urban Rehabilitation Standards Board (URSB) to determine whether property condition reports by city inspectors constitute violations of the City’s building code. The URSB is composed of 80 members (and 8 alternates) who are appointed by the Dallas City Council. The URSB may determine, after a hearing, whether a given structure is an “urban nuisance” and take various remedial measures. The URSB is authorized by city ordinance to order repairs, receivership, the closing and vacating of buildings, demolition, and civil penalties up to $2,000 a day against property owners who fail to repair or demolish a structure after a valid determination and order has been issued by the URSB. Dallas City Code, ch. 27, art. II, § 27-8.
In April and July of 1993, City code inspectors from the Department of Housing and Neighborhood Services reported to the URSB that the Plaintiffs’ two apartment buildings were in violation of the City’s building code. According to the inspectors the 2611 Meyers Street building was in need of repairs estimated to cost $84,290.00, and the 2621 Meyers Street building needed repairs costing $108,-680.00.
The URSB scheduled hearings to determine whether the buildings were in violation of the city building code and whether remedial steps should be taken. The URSB functions through hearing panels composed of members of the URSB. The Dallas City Code establishes the procedure to be used by the panels. At a hearing “an owner, lessor, occupant, or lienholder may present witnesses in his own behalf and is entitled to cross-examine any witnesses appearing against him.” Dallas, Tex., Code ch. 27, art. II, § 27-9(c). The decision of a hearing panel is final except that rehearings may be granted in certain instances. Also, the code authorizes an affected property owner to appeal from the panel decision to the state district court for a “limited hearing under the substantial evidence rule.”' Id. § 27-9(e).
Notice of the URSB panel hearings with respect to the Plaintiffs’ two buildings were mailed to the .persons listed as owners on the title records. With regard to the building at 2621 Meyers Street, the City sent notices to Rosalyn Brown and K.K. Stanfield (the previous owner) of the panel hearing “To Consider an Order of Repair or Correction of a Potential Urban Nuisance.” Ms. Brown signed the return receipt on February 28, 1994. This notice listed all of the possible actions that the URSB could take, including demolition: “If the board orders demolition, closure, vacation or removal, and if it is done by city forces, you will be required to pay for the expenses or a lien will be placed against the property.” This notice concluded by stating, “It is important that you attend this hearing or send a representative.” With regard to the structure at 2611 Meyers Street, an identical notice was sent to the person listed as the owner on the title, Robert Burkhead. Ms. Brown had purchased the property but had not yet filed her warranty deed. It appears that neither Burkhead nor the Plaintiffs received advance notice of the hearing with respect to the 2611 Meyers Street building, but Mr. Freeman learned that it was also involved when he attended the hearing in response to the notice sent to Ms. Brown concerning the 2621 Meyers Street property.
*604 At the hearing concerning the two apartment buildings on February 28, 1994, Mr. Freeman testified and was questioned by the panel members. The panel looked at pictures of the structures, questioned Mr. Freeman about what plans he had to repair them, and asked whether he had the money or the time to accomplish the tasks. Mr. Freeman testified that he intended to repair the buildings himself and requested the panel to allow him sufficient time to do so. The panel members voiced their concerns about Mr. Freeman’s ability to obtain the repair materials and his ability to renovate them by himself. The panel voted unanimously to demolish both structures.
Following this hearing, Freeman signed two notices of demolition for both apartment buildings. The City then sent out a “Notice of Demolition Order” for each building. As to the 2611 Meyers Street structure, the City sent notices to Freeman and Robert Burkhead. Freeman signed the return receipt on March 11, 1994, but Burkhead’s notices were returned “Attempted — Not Known.” Notices of a demolition order were sent to Rosalyn Brown and Charles Freeman as to the URSB’s action concerning the 2621 Meyers Street building. Freeman signed return receipts of the notices on March 11, 1994. Each notice stated that the owners “may exercise your right to an administrative rehearing and review of this demolition order.”
Mr. Freeman asked for and received a rehearing from the URSB on May 23, 1994. At the rehearing, the URSB members questioned Mr. Freeman about the two buildings, whether he had the materials to repair them, and whether any repairs had been made to the buildings since the last hearing. Mr. Freeman stated that had received some donated materials and he submitted pictures of one unit in the 2621 Meyers Street building that he had repaired. Several members of the URSB panel expressed disbelief that Mr. Freeman could renovate the units for $2000 each as he claimed. The URSB panel again voted to demolish both structures— the vote was unanimous as to the 2611 Meyers Street building, and it was five to two as to the 2621 Meyers Street building.
On the day of the hearing, Mr. Freeman signed the “Notice of Demolition” of both the 2611 and 2621 Meyers Street buildings. Neither Freeman nor Brown appealed the URSB panel decision to the state district court. A notice entitled “Appeal Denied/Demolition” was sent to the owners of each building. Notice of the proposed demolition of 2611 Meyers Street was mailed to Freeman and Burkhead; notice of the proposed demolition for the other building was mailed to Freeman and Brown. Even though the notices for Freeman and Brown were sent to the same addresses at which they had received mail about earlier hearings, all of these were returned as “Unclaimed.” No further notice was given to the Plaintiffs before the buildings were demolished in late December 1994. The costs of demolition by the City were assessed against Freeman and Brown in the amounts of $7954.72 for the building at 2611 Meyers Street and $7655.55 for the 2621 Meyers Street property.
On April 23, 1996, Freeman and Brown brought suit against the City of Dallas under 42 U.S.C. § 1983 in federal district court. Freeman and Brown contended that the City violated their rights under the Fourth, Fifth, and Fourteenth Amendments because the City did not provide adequate due process prior to demolishing the apartment buildings, did not obtain a warrant before seizing and destroying Plaintiffs’ buildings, and did not provide any due process to the Plaintiffs prior to placing a lien against the property for the costs of demolition.
On cross motions for summary judgment, the trial judge partially granted Plaintiffs’ motion, concluding that the City had violated the Fourth and Fourteenth Amendments by seizing and destroying Plaintiffs’ buildings -without a judicial war *605 rant based on probable cause, and partially granted the City’s motion by rejecting the Plaintiffs’ Fifth and Fourteenth Amendments’ due process claim. The case was submitted to a jury to determine damages under § 1983 for the City’s warrantless seizure and destruction of the apartment buildings. The jury awarded $20,000 in damages to Freeman and Brown. The City appealed and the Plaintiffs cross-appealed following entry of this judgment.
II. FOURTH AMENDMENT[1]
The government’s seizure of a person’s property implicates the Fourth Amendment, which is “made applicable to the States by the Fourteenth]!]” Soldal v. Cook County, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (citing Ker v. California, 374 U.S. 23, 30, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)).
In this case, the City of Dallas seized and destroyed the buildings owned by the plaintiffs without a warrant. This act undoubtedly constituted a “seizure” because a seizure occurs when “ ‘there is some meaningful interference with an individual’s possessory interests in that property.’ ” Soldal, 506 U.S. at 61, 113 S.Ct. 538 (quoting United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). The Fourth Amendment’s protections extend not only to searches and seizures incident to criminal investigations but also to administrative searches and seizures in the civil context. Id. at 67,113 S.Ct. 538.
The protection afforded by the Fourth Amendment extends to an individual’s possessory interests in property, even if his expectation of privacy in that property has been completely extinguished and no search within the meaning of the Amendment has taken place. Soldal, 506 U.S. at 62-63, 68, 113 S.Ct. 538; United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); United States v. Paige, 136 F.3d 1012, 1021 (5th Cir.1998). Subject only to a few specifically established exceptions not applicable here, seizures conducted outside the judicial process, without prior approval by a judge or magistrate, based on probable cause, are per se unreasonable under the Fourth Amendment. Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); Paige, 136 F.3d at 1021.
The seizures in this case do not fall within an exception to the warrant requirement fashioned by United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), and United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), allowing courts to decide after the fact whether a warrantless seizure was constitutionally unreasonable by balancing individual and government interests. Essentially, Jacobsen and Place hold that (1) a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably inflinges possessory interests by, for example, converting a temporary deprivation of possessory interests into a permanent one; and that (2) to assess the reasonableness of the government conduct, a court must balance the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the importance of the government interests alleged to justify the intrusion. In Jacobsen, the Supreme Court applied this test and concluded that the field test destruction/seizure of a trace amount of material which had already been lawfully detained, was reasonable because loss of the trace amount had only a de minimis impact on any protected property interest and that, under these circumstances, the safeguards of a warrant would only minimally advance Fourth Amendment interests. Jacobsen, 466 U.S. at 125, 104 S.Ct. *606 1652. The Court in Jacobsen added a significant caveat: “Of course, where more substantial invasions of constitutionally protected interests are involved, a war-rantless search or seizure is unreasonable in the absence of exigent circumstances.” Id. at 125 n. 28, 104 S.Ct. 1652 (citing authorities).
Thus, the Jacobserir-Place balancing test is not appropriate in this case. The seizure of the plaintiffs’ real property was not lawful in its inception. Because their seized buildings were totally and permanently destroyed, it cannot be said that the seizure had only a de minimis impact on their protected property interests. The invasions of the plaintiffs’ protected interests were more than “substantial.” Under these circumstances, it cannot be said that the safeguards of a warrant would have only minimally advanced Fourth Amendment interests. Another panel of this court recently held that the holding in Jacobsen would not be extended to cases involving permanent seizures. United States v. Paige, 136 F.3d at 1022. Because there were no exigent circumstances, the warrantless seizure and destruction of plaintiffs’ property was unreasonable and a violation of the Fourth Amendment. Jacobsen, 466 U.S. at 125 n. 28, 104 S.Ct. 1652.
III. DUE PROCESS[2]
The district court granted the City of Dallas’s motion for summary judgment on the issue of whether due process requirements were satisfied in the seizure and destruction of Plaintiffs property. This court reviews a grant of summary judgment de novo, applying the same standard as the district court. Martin v. Memorial Hospital, 130 F.3d 1143, 1147 (5th Cir.1997). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-movant, presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
The Fourteenth Amendment prohibits the government from depriving “any person of life, liberty, or property, without due process of law.” U.S. Const, amend. XIV. This guarantee affords procedural protections. Daniels v. Williams, 474 U.S. 327, 331-32, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The government must give reasonable notice to an individual of its intention to deprive him of life, liberty, or property. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-15, 70 S.Ct. 652, 94 L.Ed. 865 (1950). It also must provide him with a meaningful opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Mullane, 339 U.S. at 313-14, 70 S.Ct. 652. Following Mathews, we assess what process is due by considering and balancing three distinct factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews, 424 U.S. at 335, 96 S.Ct. 893. This approach reflects the fact that “due process is flexible and calls for such procedural protections as the particular situation demands.”[3] Morrissey v. Brewer, *607 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); accord Faulder v. Texas Bd. of Pardons & Paroles, 178 F.3d 343, 345 (5th Cir.) (per curiam) (“Procedural due process is an inherently flexible concept.”), cert. denied, — U.S. —, 119 S.Ct. 2362, — L.Ed.2d — (1999).
The Plaintiffs contend that they were denied a meaningful opportunity to be heard on the future of the apartment buildings because they were not told that the Department of Housing and Neighborhood Services had briefed panel members on their properties, they were not provided with the Department’s information on their properties, they were not given notice of the tours of their properties by URSB panel members, and the Department officials who reported the code violations were not present at either the hearings or the rehearings. We generally find a procedure to violate due process when the government fails to reveal its evidence. See Greene v. McElroy, 360 U.S. 474, 492-97, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). Non-disclosure by the government poses the risk of an erroneous deprivation because it forecloses the individual from testing the accuracy of the government’s evidence. See id. at 496-97, 79 S.Ct. 1400. This threat is so great that it generally outweighs considerations favoring non-disclosure. Robbins v. United States R.R. Retirement Board, 594 F.2d 448, 451-52 (5th Cir.1979). Cf. Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 171-72, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) (“No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.”).
We conclude that the URSB panel related to the Plaintiffs the evidence supporting the Department’s recommendation to level the apartment buildings. During the rehearings, as well as the tour of 2621 Meyers Street preceding them, URSB panel members conveyed to Freeman their concerns over the condition of the apartment buildings. Other members alerted him to the repair cost estimates.[4] Freeman chose not to call the Department officials who had cited the apartment buildings for code violations or any other persons as witnesses. Nor did Freeman seek to learn more about the repair cost estimates after the panel informed him of them. See Richardson v. Perales, 402 U.S. 389, 407, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (finding that the individual had an opportunity to confront the evidence against him where the government’s reports were available to him, and the witnesses were known and were subject to subpoena and cross examination); Cf. City of West Covina v. Perkins, 525 U.S. 234, 119 S.Ct. 678, 681-82, 142 L.Ed.2d 636 (1999)(holding that the government need not tell an individual how to recover property seized pursuant to a police search where the state statutes and caselaw do so). Because the URSB panel made Freeman aware of the circumstances favoring demolition, Plaintiffs’ assertion that the way in which the Board reached the decision to destroy the apartment buildings failed to accord with due process is without merit.[5]
The Plaintiffs also contend that the absence of a hearing before the liens attached to their properties violated due process. They assert that this omission violated due process because it resulted in *608 the City incurring unreasonable demolition costs, which were passed on to them.[6]
The Plaintiffs’ argument lacks merit. The City gave Freeman and Brown thirty days to effect the demolitions. This option protected them against the risk of exorbitant demolition costs. A hearing on costs before the demolition could have done no more. Accordingly, we conclude that the lack of a hearing before the attachment of the liens did not violate due process. Cf. Zinermon v. Burch, 494 U.S. 113, 127-30, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).
IV. CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s summary judgments in favor of the City of Dallas on the due process claim and in favor of the Plaintiffs on their Fourth Amendment claim, and the award of damages under § 1983 for the violation of the Plaintiffs’ Fourth Amendment rights.

. Judge Garza does not concur in this part of the opinion and dissents therefrom with reasons.

. Judge Dennis does not agree with the majority as to this part of the opinion and dissents therefrom with reasons.

. Applying the three-factor Mathews test, we usually hold that the individual must be heard prior to the deprivation. See Zinermon v. Burch, 494 U.S. 113, 127-28, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). However, when pre-deprivation procedural safeguards cannot be expected to protect against the type of deprivation involved, we find that a post-deprivation hearing satisfies due process. See id. at 128-30, 139, 110 S.Ct. at 984-85, 990.

. Before the rehearings, the URSB panel met with Department staffers to discuss Freeman’s request to waive the rehearing fees. According to the transcript of this briefing, this discussion did not focus on whether to raze the apartment buildings.

. The events surrounding the rehearings make any non-disclosure at the earlier hearings immaterial. See Glenn v. Newman, 614 F.2d 467, 470, 473 (5th Cir.1980) (holding that the decision to terminate the plaintiff after an ex parte hearing did not offend due process because the mayor and city council later heard the plaintiff's evidence and reaffirmed their decision to terminate).

. The Plaintiffs point to the more than $2000 disparity between the actual and estimated demolition costs for each apartment building as proof that the City paid too much.