James L. BROOKS, Plaintiff,

v.

Melinda SAUCEDA, et al., Defendants.

No. Civ.A. 99–2396–KHV.

United States District Court,
D. Kansas.

Jan. 5, 2000.

James L. Brooks, Kansas City, KS, pro se.

Henry E. Couchman, Jr., City of Kansas City, Kansas Legal Dept., Kansas City, KS, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on the *Motion To Dismiss* (Doc. # 8) filed October 7, 1999 by Melinda Sauceda, Delia M. York, and the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government").[1] Defendants argue that plaintiff's complaint fails to state a claim under Fed.R.Civ.P. 12(b)(6). For reasons stated below, defendants' motion is sustained.

### Motions To Dismiss Under Rule 12(b)(6)

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6),

---

**1.** Plaintiff also brings suit against Jane Roe, an unidentified individual who plaintiff alleges has been providing information to the municipal defendants. Roe is not a party to the present motion to dismiss.

the Court must assume as true all well pleaded facts in plaintiff's complaint and view them in a light most favorable to plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *see also Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The Court must make all reasonable inferences in favor of plaintiff. *Zinermon,* 494 U.S. at 118, 110 S.Ct. 975; *see also* Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993). The Court, however, need not accept as true those allegations that are conclusory in nature, *i.e.,* which state legal conclusions rather than factual assertions. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). The issue in reviewing the sufficiency of plaintiff's complaint is not whether he will prevail, but whether he is entitled to offer evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his theory of recovery that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. *Hall,* 935 F.2d at 1110.

### Facts

The Unified Government has adopted a set of ordinances which govern rental properties. The first of these ordinances, Section 19–491, states

> The purpose of this article is to protect the public health, safety and general welfare of the people of the City of Kansas City, Kansas in occupied dwellings by recognizing that the offering for rental of dwelling units is a business and classifying and regulating such rentals, as a rental housing business and further including as beneficial purposes:

> (1) To protect the character and stability of residential areas;

> (2) To correct and prevent housing conditions that adversely affect or are likely to adversely affect the life, safety, general welfare and health, including the physical, mental and social well-being of persons occupying dwellings;

> (3) To enforce minimum standards for heating and sanitary equipment necessary for health and safety;

> (4) To enforce minimum standards for light and ventilation, necessary for health and safety;

> (5) To prevent the overcrowding of dwellings by enforcing minimum space standards per occupant for each dwelling unit;

> (6) To enforce minimum standards for the maintenance of existing residential buildings, and to thus prevent slums and blight;

> (7) To preserve the value of land and buildings throughout the city. [sic]

> (8) To protect the public from increased criminal activity which tends to occur in residential areas which are unstable due to dwellings which are blighted or are substandard.

> It is not the intention of the council to intrude upon contractual relationships between tenant and landlord. . . .

Section 19–492 of the rental ordinances provides that

> [n]o person shall allow to be occupied, or rent to another for occupancy, any rental dwelling unit unless the owner has first obtained a license or provisional license under the terms of this article.

Under Section 19–493, the rental ordinances "apply to all rental dwellings and dwelling units, including rented single-family dwellings and rented dwelling units in owner-occupied dwellings." Section 19–509 provides that the operation of a rental dwelling without a license, in violation of Section 19–492, is a misdemeanor.

Plaintiff owns properties at 1943 North 15th Street and 1309 North 28th Street in

Kansas City, Kansas. From 1996 through 1999, Don Jamison, on behalf of plaintiff, paid a fee to the Unified Government and obtained a rental license for 1309 North 28th Street.

On May 26, 1999, the Unified Government sent plaintiff a letter which informed him that he needed a rental license for the property at 1943 North 15th Street. No renters or tenants live at the property, and the Unified Government had no factual basis for believing that it was a rental property. On June 3, 1999, plaintiff responded to the letter by asserting that the city ordinances were unconstitutional and that the Unified Government's records were wrong.[2]

On July 7, 1999, Melinda Sauceda, a building code inspector for the Unified Government, placed a green placard on a window at 1943 North 15th Street. The placard stated in relevant part:

> NOTICE TO TENANTS OF RENTAL LICENSE NON–COMPLIANCE OR LICENSE DENIAL, NON–RENEWAL, REVOCATION OR SUSPENSION ... This Is to Notify You That the Above Property Fails to Meet One or More of the Rental Licensing Requirements Below.... THE TENANT/OCCUPANT WILL HAVE TO MOVE IF THE VIOLATION(S) ARE NOT CORRECTED OR AN APPEAL HAS NOT BEEN FILED WITHIN FIFTEEN (15) DAYS OF THIS POSTED NOTICE.

Sauceda marked the following boxes on the form: "Required License Fee Not Paid" and "Rental Dwelling Unit(s) Which Are In A Substandard Condition." *Complaint* (Doc. # 1), Ex. B.

Plaintiff did not appeal. Instead, on July 13, 1999, he returned the placard to Sauceda with a second letter. In the letter, plaintiff again stated that the rental ordinances were unlawful. Plaintiff did not assert that the property was not rental property or that it was not covered by the rental ordinances.

Ten days later, on July 23, 1999, Sauceda returned to 1943 North 15th Street and placed a bright orange placard on an outside window. The placard was addressed to the occupants of the property and stated:

## FINAL DECISION

## NO LICENSE

## NO OCCUPANCY

THE CITY OF KANSAS CITY, KANSAS HAS DENIED, REVOKED OR SUSPENDED THE RENTAL LICENSE FOR THIS PROPERTY. YOU ARE ORDERED TO MOVE BY August 26, 1999. YOUR LANDLORD HAS FAILED TO MEET THE REQUIREMENTS OF THE KANSAS CITY, KANSAS RENTAL LICENSING ORDINANCE # 66057 AND # 66101.

*Complaint* (Doc. # 8), Ex. C.[3]

On July 28, 1999, Delia M. York, an attorney for the Unified Government, sent plaintiff a letter which responded to his two letters. York stated that the Unified Government believed that the ordinances were valid, relying on an unpublished case from the Kansas Court of Appeals. York also stated that defendants had reason to

---

2. Plaintiff attaches this letter to the complaint, with all other correspondence between the parties except the letter of May 26, 1999. Plaintiff refers to these documents in his complaint, and the Court therefore finds that the attached documents are incorporated as part of the complaint. *See Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1381–82 (10th Cir.1978); *Kiely v. Shores Group, Inc.*, 1994 WL 69476 at *4 n. 4 (D.Kan. Feb 25, 1994).

3. Plaintiff informs the Court that licensing ordinance # 66057 is cross-referenced with Sections 19–491, 19–492 and 19–493. Plaintiff further alleges that ordinance # 66101 has no cross-reference and plaintiff believes that this ordinance is no longer in effect. *Complaint* (Doc. # 1) at 8.

believe that 1943 North 15th Street was a rental property.

On August 7, 1999, plaintiff sent a letter to Sauceda and Carol Marinovich, mayor of the Unified Government. Plaintiff again challenged the legality of the defendants' actions but did not assert that his property was not a residential rental dwelling. Plaintiff stated that he would file a civil rights lawsuit against defendants if they did not remove the orange placard within 10 days of receipt of his letter. Defendants did not remove the placard, and in fact they are still attempting to influence the occupants of 1943 North 15th Street to force plaintiff to get a rental license.

Plaintiff brings various federal claims against defendants. Plaintiff alleges (1) that rental ordinances 19–491 and 19–492 violate his property rights under 42 U.S.C. §§ 1981, 1982, 1983 and 1985 and constitute bills of attainder;[4] (2) that Sauceda violated his Fourth Amendment rights by attempting to seize his property and deprive him of it without a warrant; (3) that Sauceda and York deprived him of due process by seizing or attempting to seize his property without a court action or judgment; (4) that the Unified Government was aware of a conspiracy to commit fraud, in violation of 42 U.S.C. § 1986; (5) that Jane Roe violated his rights by working with the government defendants in order to gain control of his property; and (6) that defendants violated 42 U.S.C. § 1982 each year that plaintiff obtained a rental license from the Unified Government for his property at 1309 North 28th Street.[5]

Plaintiff further brings state law claims under the Kansas home rule provision, Article 12, § 5 of the Kansas Constitution, and many sections of the Kansas Bill of Rights, including Section 1 (equal protection), Section 6 (prohibition of slavery), Section 12 (no forfeiture of estate for crime), Section 15 (protection against unreasonable searches and seizures), Section 17 (equal property rights of aliens) and Section 20 (powers retained by people). Plaintiff also brings claims under Kansas criminal statutes, including K.S.A. §§ 21–3205 (liability for crimes of another), 21–3206 (criminal responsibility of corporations), 21–3207 (individual liability for corporate crime), 21–3301 (attempt), 21–3302 (conspiracy) and 21–3705 (criminal deprivation of property).

## Analysis

**1. Claims Under 42 U.S.C. §§ 1981, 1982, 1985, and 1986**

■ Defendants first argue that plaintiff fails to state claims under 42 U.S.C. §§ 1981, 1982, 1985 and 1986 because he does not allege discrimination. Plaintiff agrees that he is white and that he does not allege that defendants discriminated against him. *See Reply To Defendants' Motion To Dismiss* (Doc. # 21) at 5. Plaintiff contends that nonetheless these sections provide him a cause of action because they are designed to protect the rights of all individuals. The Court disagrees. Plaintiff's argument implies that the civil rights statutes create the property rights which he asserts in this case. They do not. These statutes ensure that all citizens receive equal treatment under the law. In other words, plaintiff's property rights must exist elsewhere in state or federal law. Sections 1981, 1982, 1985(3) and 1986 simply ensure that protected individuals receive the same rights.[6]

■ Section 1981 provides that

---

**4.** In his prayer for relief, plaintiff also alleges that Sections 19–493 and 19–509 are bills of attainder. *Complaint* (Doc. # 1) at 17.

**5.** Plaintiff also alleges that defendants violated his rights under the Sixth, Eighth, Ninth and Tenth Amendments.

**·6.** In his first claim, plaintiff apparently alleges that 42 U.S.C. § 1983 gives him a property right. Section 1983 does not create substantive rights, however; it merely provides a cause of action. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 616–18, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). As the United States Supreme Court has noted, "[a]lthough § 1981 does not itself use the word 'race,' the Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." *St. Francis College v. Al–Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160, 168, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)). Plaintiff must therefore allege discrimination to bring a Section 1981 claim. *Id.* at 613, 107 S.Ct. 2022; *see also Olguin v. Lucero*, 87 F.3d 401, 404–05 (10th Cir.1996) (purpose of Section 1981 is to prevent discrimination on basis of race or ethnic background). Because plaintiff expressly states that he is not claiming discrimination, the Court finds that his Section 1981 claim does not state a claim for relief.

■ The United States Supreme Court has also stated that:

Section 1982 guarantees all citizens of the United States, "the same right ... as is enjoyed by white citizens ... to inherit, purchase, lease, sell, hold, and convey real and personal property." The section forbids both official and private racially discriminatory interference with property rights.

*Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 616, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987) (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968)). Therefore, to bring a claim under Section 1982, plaintiff must show that he is a member of "the kind of group that Congress intended to protect when it passed the statute." *Cobb*, 481 U.S. at 617, 107 S.Ct. 2019; *see also Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir.1989). Plaintiff is not, and the Court therefore dismisses plaintiff's Section 1982 claim for failure to state a claim.

■ Section 1985(3) provides that:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir.1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101–02, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). The Court therefore dismisses plaintiff's Section 1985(3) claims under Rule 12(b)(6).

■ Section 1986 provides that:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrong-

ful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented. 42 U.S.C. § 1986. To bring a Section 1986 claim, plaintiff must first show a conspiracy in violation of Section 1985(3). *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990). Because the Court has already dismissed plaintiff's Section 1985(3) claims for lack of discrimination, the Court likewise dismisses plaintiff's Section 1986 claim for failure to state a claim upon which the Court can grant relief.

### 2. Bills of Attainder

■ Defendants next argue that the municipal ordinances which plaintiff challenges are not bills of attainder. In response, plaintiff argues that because his complaint specifically alleges that the ordinances are bills of attainder, the Court must accept this allegation as true. *See Reply To Defendants' Motion To Dismiss* (Doc. # 21) at 4, 5. While the Court must accept well pleaded allegations as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also Hall*, 935 F.2d at 1110; *Mitchell v. King*, 537 F.2d 385 (10th Cir.1976) (legal conclusions, deductions, and opinions couched as facts not presumed true). The Court therefore conducts its own analysis of whether the ordinances are bills of attainder.

■ The United States Constitution states that "[n]o State shall ... pass any Bill of Attainder ..." U.S. Const. Art. 1, § 10. In deciding whether a statute inflicts forbidden punishment, the Court looks at three elements: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes"; and (3) whether the legislative record "evinces a congressional intent to punish." *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 852, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). The Court finds that plaintiff fails to satisfy any of the three elements.

■ The ordinances do not impose a penalty which is within the historical meaning of legislative punishment. Plaintiff's complaint can be read in two ways. One could read the complaint as alleging that Section 19–509 is a bill of attainder because it makes the failure to obtain a license a misdemeanor. This ordinance is not a bill of attainder, however, because it is not "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The complaint does not suggest that plaintiff has no right to a trial before being convicted of this misdemeanor. Plaintiff therefore does not allege legislative punishment under Section 19–509.

■ Alternatively, one could read the complaint as alleging that Sections 19–491, 19–492, and 19–493 are bills of attainder because they punish landlords by forcing them to obtain rental licenses and subject themselves to control by the Unified Government. These requirements, however, are not a punishment. "The prohibitions on 'Bills of Attainder' in Art. I §§ 9–10, prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct." *Lynce v. Mathis*, 519 U.S. 433, 440 n. 12, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). The rental licensing requirement is not a punishment for past conduct. To find otherwise requires the unreasonable inference that the Unified Government believes renting property is wrong and therefore intends to punish those who elect to become landlords. *See Watson v. City of Kansas City, Kan.*, 80 F.Supp.2d 1175 at 1191–92 (D.Kan.1999) (court need not make unreasonable inferences). Even though a law

places burdens on citizens, these burdens are not necessarily punishment. *Selective Service*, 468 U.S. at 852, 104 S.Ct. 3348. (citing *Nixon*, 433 U.S. at 470, 97 S.Ct. 2777).

Even if the Court were to construe this burden as a punishment, that punishment would not constitute a legislative punishment, as historically defined. The Supreme Court has noted that the prohibitions on bills of attainder prevent the legislature from imposing (1) the death penalty, (2) imprisonment, (3) banishment, (4) the punitive confiscation of property, and (5) bars to participation by individuals or groups in specific professions. *Selective Service*, 468 U.S. at 852, 104 S.Ct. 3348 (citations omitted). The ordinances in question impose no such penalties. At best, they require landlords to pay a yearly fee and give the Unified Government some power over the property, including the power to force tenants and occupants to move out. These powers do not, however, rise to the level of confiscation of property. Plaintiff does not allege that he has lost ownership of the property or that the rental ordinances give defendants the power to take ownership of the property.

In addition, the legislative record clearly states that the ordinances do not have a punitive intent; they are regulatory in nature. Plaintiff alleges that the stated purposes of Section 19–401 are false, and alleges that the Unified Government actually intended the ordinances as a way to obtain control over property. Such intent, however, is not *punitive* intent. As mentioned above, to find punitive intent, the Court must infer that the Unified Government intended to punish landlords. This inference is not reasonable. At best, even if defendants intend to gain control of rental properties, the only reasonable inference is that the Unified Government hopes to gain future benefit, such as the value of the property. While such an intent would be

of doubtful legitimacy, it would not be punitive. In short, the Court finds that the ordinances are not based on punitive intent and do not impose any punishment on plaintiff. Consequently they are not bills of attainder.

### 3. Due Process

Plaintiff's due process claim also fails. Plaintiff does not specify whether his claim is for procedural due process or substantive due process, but it appears that he intends a procedural due process claim.[7]

To challenge procedural due process, plaintiff must first show a deprivation of liberty or property. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 517 (10th Cir.1998). Defendants argue that they have not deprived plaintiff of his property. Plaintiff's complaint supports defendants' argument. Plaintiff alleges that Sauceda placed two notices on his property—the first of which informed him of the rental license problem and the potential that occupants would have to vacate if the problem was not remedied or plaintiff did not appeal. After the time for appeal had run, Sauceda placed another notice on the property, directing all occupants to vacate by August 26, 1999. Plaintiff alleges that defendants continue to attempt to influence the occupants, to force him to get a rental license, but he does not allege that defendants have deprived him of any property interest. He does not allege that any occupants have moved out or that defendants have otherwise deprived him of his property. *See Watson*, 80 F.Supp.2d at 1188–89. In fact, since defendants are allegedly attempting to force plaintiff to obtain a rental license, the complaint suggests that defendants have not forced anyone from the property. *See Complaint* (Doc. # 1) at 8.

Even if plaintiff has alleged a deprivation of property, however, he fails

---

7. While plaintiff's due process claim only specifically targets Sauceda and York, his complaint elsewhere suggests that Sauceda and York were acting pursuant to policies of the Unified Government. The Court therefore construes plaintiff's procedural due process claim as one against the Unified Government as well as the two individual defendants.

to allege the lack of procedural due process. Generally, to satisfy due process, "individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993); *see also Samuels v. Meriwether*, 94 F.3d 1163, 1166–67 (8th Cir.1996) (notice of building problem and opportunity to appear before municipal board satisfies procedural due process). In this way, plaintiff has the opportunity to prevent " 'substantively unfair or mistaken deprivations of property' " *Id.* at 53, 114 S.Ct. 492 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80–81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). To state a procedural due process claim, plaintiff must show that the government process which he must follow is insufficient to properly protect his ownership rights. *See Winters v. Board of County Comm'rs*, 4 F.3d 848, 856 (10th Cir.1993); *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir.1998). "The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures." *Winters*, 4 F.3d at 856. Plaintiff's complaint shows that he received both notice and an opportunity to be heard. Defendants twice gave plaintiff notice that he needed a rental license before they placed the notice to vacate on the property. The notice of July 7, 1999 stated that plaintiff had the right to appeal. Plaintiff does not allege that the notices or opportunities for hearing were inadequate. Plaintiff simply chose not to utilize the process provided. The Court therefore dismisses plaintiff's procedural due process claim for failure to state a claim.

In addition, even if plaintiff properly alleged a violation of procedural due process, he fails to meet his burden of showing that this violation was clearly established. Sauceda and York are therefore entitled to qualified immunity on plaintiff's procedural due process claim. *See Tonkovich*, 159 F.3d at 530–31.

■■■ Even if the Court construed plaintiff's due process claim as one for substantive due process, it would also fail. Plaintiff's Fourth Amendment and procedural due process claims prevent a substantive due process claim here. "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.' " *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *Armendariz v. Penman*, 75 F.3d 1311, 1319–20 (9th Cir.1996) (Fourth Amendment and procedural due process claims preempt substantive due process claim based on seizure of property).

■■■ Furthermore, even if the Court examined the merits of plaintiff's substantive due process claim, it would fail to state a claim on which relief could be granted. To bring a substantive due process claim, plaintiff must allege the deprivation of property. *See Tonkovich*, 159 F.3d at 527. Plaintiff fails to do so. In addition, plaintiff fails to allege that defendants violated a fundamental right. Therefore defendants' actions are not subject to strict scrutiny. *See Washington v. Glucksberg*, 521 U.S. 702, 722, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The Court must therefore determine whether the ordinances reasonably further legitimate governmental interests, see *id.*, and whether the executive actions which enforce the ordinances "would 'shock the conscience of federal judges.' " *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (further quotation omitted)).

■■■ The Court finds that the allegations in plaintiff's complaint, even when viewed in the light most favorable to him, show that the ordinances reasonably further legitimate government interests.

Plaintiff alleges that the stated purposes in the ordinances are false and that defendants adopted the ordinances to obtain control over rental properties. The Court sees two ways of interpreting this allegation of control. First, one can interpret the complaint as alleging that the rental ordinances give defendants control over rental properties in the form of rental licenses, fees, and inspections. To the extent defendants intended this type of control, the Court finds that the Unified Government has a legitimate government interest in these activities. It is well established that inspections and monitoring of rental properties serve important government interests in promoting safe living conditions and a well-maintained community. *See Frank v. State of Maryland,* 359 U.S. 360, 371–72, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), *overruled on other grounds, Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Likewise, licensing requirements and fees serve a legitimate purpose by enabling the Unified Government to keep track of rental properties within its jurisdiction and by providing a source of revenue to fund the necessary records and inspections.

One can also interpret plaintiff's complaint as alleging that defendants enacted the rental ordinances to obtain *complete* control over the properties by forcing plaintiff out of them. To the extent that this may be plaintiff's claim, the Court rejects his conclusory allegation as unsupported by the complaint. Plaintiff does not allege that the rental ordinances require him to relinquish ownership of the property. Therefore the Court cannot reasonably infer any way in which defendants might obtain complete control of the property under the rental ordinances. Plaintiff can regain control over his property by ceasing to use it as a rental dwelling. In addition, plaintiff's allegation implies that defendants either (1) intend to force all landlords out and take complete control of all rental property within their jurisdiction or (2) adopted the entire set of rental ordinances for the sole purpose of

forcing plaintiff to give up ownership of this parcel of land. The Court finds neither inference is a reasonable one. The Court therefore finds that the ordinances reasonably further a legitimate governmental interest—monitoring the conditions of rental property.

 Likewise, the actions taken by defendants to enforce the ordinances do not violate substantive due process. To shock the Court's conscience, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power;" indeed, plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig,* 64 F.3d at 573. To meet this standard, plaintiffs must allege "a high level of outrageousness." *Id.* at 574. As the Tenth Circuit has stated,

> [i]n order to discern whether the facts of the instant case "shock the conscience" so as to rise to the level of a substantive due process violation, we must bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety.

*Id.* at 573 (citations omitted). Keeping these considerations in mind, conduct most likely to shock the conscience is "conduct intended to injure in some way unjustifiable by any government interest." *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998). Even when viewed in the light most favorable to plaintiff, his substantive due process claim hardly demonstrates conduct which abrogates "the decencies of civilized conduct." *Id.* at 1716. Here, defendants sent letters to plaintiff and placed placards on his property. Even if defendants lacked a factual basis for believing that

plaintiff had violated the rental ordinances, their actions are not so severe as to shock the Court's conscience. Defendants are entitled to dismissal of any substantive due process claim.[8]

### 4. Fourth Amendment

Defendants next argue that plaintiff cannot bring Fourth Amendment claims against them.[9] Plaintiff does not allege that a search occurred in this case, and defendants argue that plaintiff also fails to allege a seizure of his property.[10] A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Plaintiff does not allege that any occupants vacated the property because of the notices or that defendants took any action to remove occupants from the property. Without such an allegation, defendants' actions mount to no more than

threats of future harm. *See Watson*, 80 F.Supp.2d at 1188–89. Plaintiff concedes as much, because his complaint incorporates his letter to Sauceda dated August 7, 1999, which states that the placards were "threats, without action, [that] have not caused me a direct harm and/or injury." *Complaint* (Doc. # 1) at 11. In addition, plaintiff's Fourth Amendment claim specifically alleges that defendants "attempted to commit a seizure." *Complaint* (Doc. # 1) at 11. The Court therefore finds that because he fails to allege a seizure of his property, plaintiff fails to state a Fourth Amendment claim.[11]

### 5. Other Federal Claims

Plaintiff also states that he brings claims under the Sixth, Eighth, Ninth and Tenth Amendments to the United States Constitution. Plaintiff does not describe any factual basis for claims under these amendments or explain how they provide clearly established rights which Sauceda and York

8. In addition, even if Sauceda and York violated substantive due process, plaintiff fails to meet his burden of showing that this outcome was clearly established. Sauceda and York are therefore entitled to qualified immunity on plaintiff's due process claim. *See Tonkovich*, 159 F.3d at 530–31.

9. Plaintiff only brings his Fourth Amendment claim against Sauceda. *See Complaint* (Doc. # 1) at 11. Elsewhere, however, plaintiff suggests that he brings this claim against all defendants, because he alleges that all defendants acted unreasonably. *See id.* at 9. Reading plaintiff's complaint liberally, the Court construes plaintiff's Fourth Amendment claim as alleging that Sauceda was acting under the unreasonable policies of the Unified Government and that York acted unreasonably by asserting the lawfulness of the Unified Government's policies.

10. Defendants also argue that even if a seizure occurred, it was proper because they acted reasonably under the Fourth Amendment. The Court declines to reach the merits of this argument, because none of the parties address what the Court views as the key issues regarding the reasonableness of defendants' actions. First, plaintiff alleges that defendants acted unreasonably by failing to investigate any facts before seizing his property. Viewed in the light most favorable

to plaintiff, this allegation suggests that defendants never had probable cause to believe that his property was a rental dwelling. Second, the complaint does not allege whether defendants obtained a warrant before seizing plaintiff's property and neither side addresses whether a warrant was required. *Compare Freeman v. City of Dallas*, 186 F.3d 601, 606 (5th Cir.1999) (warrant required before demolition) *with Hroch v. City of Omaha*, 4 F.3d 693, 696–97 (8th Cir.1993) (no warrant required if constitutionally-adequate substitutes exist). Because these issues appear to be substantial, the Court declines to address them until plaintiff has adequately alleged a seizure of his property. Further, the Court declines to address the qualified immunity question which Sauceda and York raise because before determining whether they are entitled to qualified immunity, the Court should determine whether a constitutional violation occurred. *See Tonkovich*, 159 F.3d at 516–17.

11. At this point, however, the Court cannot say beyond a doubt from the allegations of the complaint that plaintiff can prove no set of facts that would entitle him to relief under the Fourth Amendment. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *see also Jacobs*, 927 F.2d at 1115. Plaintiff may well be able to allege a meaningful interference with his possessory interest in the property.

violated in this case. The Court cannot see how these amendments apply to the allegations in plaintiff's complaint. The Court therefore dismisses any claims under these amendments for failure to state a claim and grants Sauceda and York qualified immunity on any claims under these amendments. *See Tonkovich*, 159 F.3d at 530–31.

### 6. State Law Claims

■ Defendants argue that plaintiff cannot bring state law claims based on Kansas criminal statutes. Plaintiff provides no authority that the cited statutes provide him a civil cause of action. Plaintiff fails to show that these statutes create a duty to himself as an individual, rather than protecting the public at large. *See Schlobohm v. United Parcel Service, Inc.*, 248 Kan. 122, 125, 804 P.2d 978, 981 (1991). "'A statute which does not purport to establish a civil liability but merely makes provision to secure the safety or welfare of the public as an entity is not subject to construction establishing a civil liability.'" *Loar v. Roletto*, 26 Kan.App.2d 246, 982 P.2d 993, 994 (1999), review denied (quoting *Greenlee v. Board of Com'rs of Clay County*, 241 Kan. 802, 804, 740 P.2d 606, 608 (1987)). Plaintiff does not show that the legislature intended to grant him a private cause of action for violations of the cited criminal statutes, and the Court declines to create private causes of action based on these statutes. *See OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 341, 918 P.2d 1274, 1297 (1996) (legislature can create private cause of action if it so desires). The Court therefore dismisses plaintiff's state law claims for violations of K.S.A. §§ 21–3205, 21–3206, 21–3207, 21–3301, 21–3302 and 21–3705.

■ The Court also dismisses plaintiff's state constitutional claims. First, plaintiff only seeks monetary damages for the alleged violations of state law—he does not seek declaratory judgment or injunctive relief for any of his state constitutional claims. Plaintiff provides no authority, however, that Kansas would allow plaintiff to bring a state-based analogy to a *Bivens* suit, *i.e.* a claim for monetary damages brought directly under the Kansas Constitution. *See Sharp v. State*, 245 Kan. 749, 754, 783 P.2d 343, 347 (1989); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). To the extent that plaintiff attempts to bring these claims under Section 1983, they also fail. Section 1983 only provides a cause of action for violations of federal constitutional or statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Taylor v. Nichols*, 409 F.Supp. 927, 933 (D.Kan.1976). "The protection of rights derived purely from state law and incident to state rather than federal citizenship is therefore beyond the pale of both federal court jurisdiction and the substantive remedial provisions of the Civil Rights Act." *Taylor*, 409 F.Supp. at 933.

Even if the Court reached the merits of these claims, many of them fail to state a claim upon which relief might be granted. Many of the constitutional rights which plaintiff invokes have no apparent relation to the facts of this case. *See* Kansas Const. Bill of Rights § 6 ("Slavery prohibited; servitude for conviction of crime"); § 12 ("No forfeiture of estate for crimes"); § 20 ("Powers retained by people"). The Court therefore dismisses any claims based on any such amendments.

■ Plaintiff in other respects has failed to state a claim upon which relief can be granted. Plaintiff alleges that defendants' conduct violated his right to equal protection. *See* Kan. Const. Bill of Rights § 1.[12] Kansas applies the same standard to equal protection claims under both the United States and Kansas constitutions. *See Matter of Hay*, 263 Kan. 822,

---

12. In his response to defendants' motion to dismiss, plaintiff apparently concedes that the rental ordinances do not violate equal protection. *See Reply To Defendants' Motion To Dismiss* (Doc. # 21) at 9. Because plaintiff raises the claim in his complaint, however, the Court addresses the merits of his equal protection claim.

832, 953 P.2d 666, 675 (1998); *Guardian Title Co. v. Bell,* 248 Kan. 146, 154, 805 P.2d 33, 39 (1991). "[A]t the heart of any equal protection claim must be an allegation of being treated differently than those similarly situated." *Tonkovich,* 159 F.3d at 533. Plaintiff does not allege any differential treatment and he therefore fails to plead the material elements of an equal protection claim. *See Hall,* 935 F.2d at 1110.

■ In addition, unless plaintiff alleges a violation of a fundamental right or discrimination against a suspect class, defendants only need a rational justification for the different treatment. *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir.1996). Plaintiff does not allege the violation of a fundamental right nor does he allege status in a protected class. *See Watson,* 80 F.Supp.2d at 1190 (landlords not suspect class). Defendants therefore only need a rational basis for their actions. As noted in the Court's discussion of substantive due process, plaintiff's complaint fails to allege the lack of a rational basis. The Court therefore dismisses plaintiff's equal protection claim under the Kansas Constitution.

■ The Court dismisses plaintiff's claim under Section 17 of the Kansas Bill of Rights, which provides that

[n]o distinction shall ever be made between citizens of the state of Kansas and the citizens of other states and territories of the United States in reference to the purchase, enjoyment or descent of property. The rights of aliens in reference to the purchase, enjoyment or descent of property may be regulated by law.

Kan. Const. Bill of Rights § 17. Like 42 U.S.C. §§ 1981, 1982, 1985 and 1986, this section does not create property rights for plaintiff. Instead, it prevents discrimination against aliens regarding property rights which already exist under Kansas law. *See Hushaw v. Kansas Farmers' Union Royalty Co.,* 149 Kan. 64, 86 P.2d 559 (1939); *Hauser v. Doyle's Estate,* 143 Kan. 719, 56 P.2d 1217, 1219 (1936); *Buff-*

*ington v. Grosvenor,* 46 Kan. 730, 27 P. 137, 138 (1891). Plaintiff does not allege that he is an alien or that the rental ordinances make any distinction between citizens and aliens. *See Gilbert v. Mathews,* 186 Kan. 672, 677, 352 P.2d 58, 64 (1960). The Court therefore dismisses his Section 17 claim under Rule 12(b)(6).

Plaintiff's claim under Section 15 of the Kansas Bill of Rights also fails to state a claim upon which relief can be granted. This section states that "[t]he right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate...." Kan. Const. Bill of Rights § 15. This section provides the same protection as the Fourth Amendment to the United States Constitution and the same standard therefore applies. *State v. Ninci,* 262 Kan. 21, 29, 936 P.2d 1364, 1373 (1997); *see also State v. Johnson,* 253 Kan. 356, 362, 856 P.2d 134, 138 (1993) ("the wording and scope of the two sections are identical for all practical purposes. If conduct is prohibited by one it is prohibited by the other"). The Court therefore finds that plaintiff's Section 15 claim fails to allege a seizure of his property.

■ Finally, the Court dismisses plaintiff's claim that the rental ordinances violate the home rule provision of the Kansas Constitution. *See* Kan. Const. Art. 12, § 5. This section provides that

[c]ities are hereby empowered to determine their local affairs and government.... Cities shall exercise such determination by ordinance passed by the governing body ... subject only to enactments of the legislature of statewide concern applicable uniformly to all cities [and] to other enactments of the legislature applicable uniformly to all cities....

*Id.* Plaintiff provides no argument why the rental ordinances exceed the Unified Government's power under the home rule provision. Plaintiff apparently contends that because the ordinances violate federal and state laws, they exceed the Unified

Government's home rule power. *See generally Claflin v. Walsh*, 212 Kan. 1, 7, 509 P.2d 1130, 1135 (1973). The Court has already rejected plaintiff's claims that the ordinances violate federal and state laws. " 'A city ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute, or unless the legislature has clearly preempted the field so as to preclude municipal action.' " *McCarthy v. City of Leawood*, 257 Kan. 566, 569, 894 P.2d 836, 839 (1995) (quoting *Moore v. City of Lawrence*, 232 Kan. 353, Syl. ¶ 4, 654 P.2d 445 (1982)). Because plaintiff fails to allege that the ordinances violate federal or state laws, the Court finds that plaintiff's home rule claim also fails.

**7. Claims Against Jane Roe**

The Court questions whether plaintiff has a federal claim against Roe which states a claim upon which relief can be granted. Plaintiff's complaint expressly states that Roe did not act under color of state law. An action under 42 U.S.C. § 1983 requires that defendant act under color of state law. *Hall v. Doering*, 997 F.Supp. 1445, 1450 (D.Kan.1998). In addition, to the extent plaintiff brings claims against Roe under Sections 1981, 1982, 1985 or 1986, these claims are subject to the deficiencies which require dismissal against the named defendants.

Further, while plaintiff is entitled to bring suit against an anonymous defendant, plaintiff must sufficiently identify the defendant to enable service of process. At this point, plaintiff has only identified Roe as a citizen providing information to the Unified Government. This information is not sufficient to identify Roe for purposes of service without the help of the Unified Government. The Court therefore orders plaintiff to show cause in writing **on or before January 18, 2000** why the Court should not dismiss plaintiff's claims against Roe without prejudice.

**IT IS THEREFORE ORDERED** that the *Motion To Dismiss* (Doc. # 8) filed October 7, 1999 by defendants Melinda Sauceda, Delia M. York, and the Unified

Government of Wyandotte County/Kansas City, Kansas ("Unified Government") be and hereby is **SUSTAINED.** If plaintiff wishes to amend his Fourth Amendment claim and his claim under Section 15 of the Kansas Bill of Rights, he shall file a motion for leave to amend, in compliance with D.Kan.Rule 15.1, **on or before January 18, 2000.**

**IT IS FURTHER ORDERED** that plaintiff show cause in writing **on or before January 18, 2000** why the Court should not dismiss his claims against Jane Roe without prejudice for the reasons stated above.